**Tina Marie GARCIA, Individually and
as Next Friend of Andrea Lynn
Garcia, a Minor, Petitioners,**

v.

**CENTRAL POWER & LIGHT CO. et
al., Respondents.**

No. C–4640.

Supreme Court of Texas.

Jan. 29, 1986.

Rehearing Denied March 19, 1986.

Dan Pozza, Pasqual & Pozza, San Antonio, for petitioners.

Darrell L. Barger, Hunt, Hermansen, McKibben & Barger, Ronald B. Brin, Brin & Brin, Georgia D. Flint, Richard E. Flint, P.C., Corpus Christi, Gay C. Brinson, Jr., Vinson & Elkins, Houston, Cecil D. Redford, Corpus Christi, for respondents.

## OPINION

HILL, Chief Justice.

This is a wrongful death suit brought by the surviving beneficiaries of David Garcia for actual damages against Sargent & Lundy, Mid-West Conveyor, Inc., and H.B. Zachry Company and for exemplary damages against Central Power & Light Company. After a trial to a jury, a take-nothing judgment was rendered against the Garcias. In their sole issue on appeal, the Garcias argued the trial court's allowance of peremptory challenges was erroneous. The court of appeals disagreed and affirmed the trial court's judgment. 703 S.W.2d 696. We reverse the judgments of the courts below and remand this cause for trial.

David Garcia was employed by CP & L as a helper in the coal-handling section of the Coleto Creek Power Station in Goliad County, Texas. On February 5, 1982, Garcia was assigned to work on a bulldozer in the area of the coal reclaim pile. His job was to bulldoze coal toward the center of the reclaim pile so that the coal would fall down the feeder grates onto an underground conveyor belt that carried the coal to the plant for fuel. Garcia was bulldozing near the reclaim pile when he called the control room and stated that he saw something on the "reclaim." Garcia then apparently got off his bulldozer and entered the cut out place in the coal pile. His body was subsequently found buried in the coal pile, and he died shortly thereafter.

The Garcias filed suit against CP & L alleging gross negligence because of its alleged failure to provide a safe working place for its employees. The Garcias also brought suit for joint and several liability against Sargent & Lundy (the design engineer of the power station), Mid-West (the supplier of the power station's coal-handling conveyor system), and Zachry (the general contractor of the power station), alleging specific acts of negligence and/or products liability with reference to their respective responsibilities for the design and construction of the Coleto Creek Power Station and its coal-handling system.

Mid-West and Sargent & Lundy both filed cross-actions against each other, CP & L, and Zachry, affirmatively pleading the doctrine of comparative fault, and sought indemnity and/or contribution from such cross-defendants in the event Mid-West and Sargent & Lundy were found liable for the accident. CP & L also filed a cross-action against Sargent & Lundy and Mid-West, seeking indemnity and/or contribution from these two defendants if CP & L was found liable. In addition, each cross-defendant answered by way of denial to the respective cross-actions asserted against them. The trial court sustained Zachry's plea of privilege to be sued in Bexar County in response to the Garcias' original petition, and, when the Garcias filed a second petition again naming Zachry as a defendant, the trial court sustained Zachry's plea in abatement. However, Zachry remained a defendant as a result of the cross-actions filed by Sargent & Lundy and Mid-West.

The cause eventually proceeded to trial and the trial court allocated, without objection, six peremptory challenges to the Garcia family, and a total of ten peremptory challenges to the four defendants. However, after the voir dire examination, the Garcias moved to allocate the peremptory challenges six and six as opposed to six and ten because the attorneys' representations during voir dire indicated that there was no antagonism among the defendants as a matter of law. TEX.R.CIV.P. 233. Alternatively, the Garcias argued that if antagonism did exist, it was so slight that it would be an abuse of discretion to award defendants ten peremptory challenges compared to the Garcias' six. The trial court overruled the Garcias' motion.

Trial was to a jury which answered twenty-three special issues. By a ten-to-two verdict, the jury found that Garcia was 100% negligent, and the trial court accordingly rendered a take-nothing judgment against the Garcias.

The Garcias' sole complaint on appeal was the overruling of their motion to allocate the same number of peremptory challenges to each side based on their assertion

that there was no antagonism between the respective defendants as a matter of law. The court of appeals affirmed the trial court's ruling, stating that antagonism was present because of the cross-actions between the defendants and because the jury was asked to allocate causation among each of the four defendants.

■ In allocating peremptory challenges when multiple litigants are involved on one side of a lawsuit, a trial court must determine whether any of those litigants on the same side are antagonistic with respect to an issue of fact that the jury will decide. *Patterson Dental Co. v. Dunn*, 592 S.W.2d 914, 918 (Tex.1979). In this case, the trial court conducted a pre-trial hearing immediately before the voir dire examination. At this pre-trial hearing, the defendants informed the court that they were united in asserting that Garcia was 100% contributorily negligent and requested that they be allocated twelve or fourteen strikes. Although recognizing that some antagonism might exist among the defendants because a comparative causation issue would be submitted to the jury, the Garcias contended at that time that eight or nine peremptory challenges would be sufficient. The trial court thereupon awarded the defendants a total of ten peremptory challenges and granted the Garcia's six peremptory challenges. A voir dire examination followed.

During the voir dire examination, the defendants asserted Garcia's contributory negligence as the sole cause of his death, and *also* made affirmative exculpatory representations about their co-defendants. For example, the attorney for CP & L stated: "They are claiming that some of the defendants who designed this plant did not design it properly. Well, you're gonna hear testimony about that, and I think you will see that the plant was designed properly." Later, that same attorney stated:

Sargent and Lundy designed the plant, and the plant was designed properly. H.B. Zachry built the plant, and they built it in accordance with the design, and Mid-West Conveyors, they supplied the conveyor system out there, and what

we are telling you that there is nothing wrong with the design. Mr. Garcia was properly trained, and he knew about it. He just made a mistake....

The attorney for Sargent & Lundy then stated: "With regard to CP & L, that is a household word down here in this part of the country. They are an extremely competent organization." The attorney for Zachry also spoke on behalf of CP & L: "We, also, think, however, that the evidence is gonna show that David Garcia had good training about the dangers of this coal pile in several ways ... The evidence is probably gonna show that David Garcia really did have some very meaningful type of training." Lastly, the Zachry attorney summed up the case on behalf of all the defendants:

So it is our position, really, not just on our own behalf that this suit has no merit against H.B. Zachry, but I think after you have heard all the evidence, really, and as sad as it may be, that this suit does not really have any merit against any of the people that were sued in the case.

■ The existence of antagonism is a question of law. *Patterson*, 592 S.W.2d at 919. If no antagonism exists, each side must receive the same number of strikes. We hold that, as a matter of law, no antagonism existed among the defendants.

The defendants contend, however, that in addition to the Garcias' admission of antagonism prior to voir dire, the pleadings themselves established several sources of antagonism. Both Mid-West and Sargent & Lundy pled that the accident was caused solely by the other defendants. Further, Sargent & Lundy, Mid-West, and CP & L asserted cross-actions against each other and Zachry affirmatively seeking indemnity and contribution. Zachry remained in the suit only because of the cross-actions filed by Sargent & Lundy and Mid-West. Moreover, the Garcias' allegations against Mid-West included claims of product liability. Thus, the defendants contend that antagonism existed as a matter of law because the comparative liability of all the

defendants was accordingly submitted to the jury. *See Duncan v. Cessna Aircraft Company,* 665 S.W.2d 414, 427 (Tex.1984).

■ The defendants did indeed file cross-claims and allege that other defendants were the sole cause of the plaintiff's injuries. Prior opinions of this court have held that such pleadings were sufficient to establish antagonism. *E.g., Shell Chemical Company v. Lamb,* 493 S.W.2d 742 (Tex. 1973); *Tamburello v. Welch,* 392 S.W.2d 114 (Tex.1965). However, in *Patterson,* this court made it clear that in determining whether antagonism exists, the trial court must consider the pleadings, information disclosed by pretrial discovery, information and representations made during voir dire of the jury panel, and any other information brought to the attention of the trial court before the exercise of the strikes by the parties. 592 S.W.2d at 919. In this case, the pleadings, viewed in isolation, support a finding of antagonism. However, as we noted in *Patterson,* the pleadings are not the only factor. *Id.* The existence of antagonism must be finally determined after voir dire and prior to the exercise of the strikes of the parties. Here, the affirmative exculpatory representations made by the defendants during voir dire overcame any antagonism evidenced by the pleadings and established that no antagonism existed between the defendants.

■ Once it is determined that the trial court committed error in allocating peremptory challenges, the next step is to determine if the error resulted in a trial that was materially unfair, thus requiring reversal. *Id.* at 920. Normally, the determination of whether a trial was materially unfair requires that the entire record, including the statement of facts, be examined by the reviewing court. *Id.* at 921. When the trial is hotly contested and the evidence sharply conflicting, the error results in a materially unfair trial without showing more. *Id.*

■ In this case, there were no motions for summary judgment filed. At trial, there were only two motions for an instructed verdict, and both were by Mid-West concerning the strict product liability claim against them. The jury heard from eighteen witnesses. The Garcias brought two experts to testify that the safety training of CP & L was inadequate and the design of the plant was also defective. The defendants countered with expert witnesses of their own to testify that the design of the plant was proper. The Garcias also brought forward many witnesses to testify about the lack of warnings given by CP & L to employees regarding the hazards of the coal pile. CP & L countered with witnesses of their own who testified that employees were indeed warned of the dangers of the coal pile. The jury was then asked twenty-three special issues many of which contained several parts. As to these issues, not only did none of the defendants take a position opposite to the others they continued to make affirmative exculpatory statements about their co-defendants in jury argument. Given these circumstances, and the ten-to-two verdict, we hold that this was a hotly contested trial which resulted in a materially unfair trial as a matter of law. We accordingly reverse the judgment of the courts below and remand this cause for trial.