Willis Dale PARKER and wife, Lois
Lavon Parker, Appellants,

v.

ASSOCIATED INDEMNITY
COMPANY, Appellee.

No. 04–85–00512–CV.

Court of Appeals of Texas,
San Antonio.

July 23, 1986.

Rehearing Denied Sept. 2, 1986.

Sam Bashara, San Antonio, for appellants.

Kenneth Fuller, Aaron L. Jackson, San Antonio, for appellee.

Before CADENA, C.J., and BUTTS and CANTU, JJ.

BUTTS, Justice.

The Parkers, husband and wife also acting as next friend of their three minor children, appeal from a declaratory judgment. TEX.REV.CIV.STAT.ANN. art. 2524–1 (Vernon 1965).[1]

An earlier jury trial resulted in a substantial jury verdict in favor of the Parkers for the death of their teen-age daughter. An insurance company, not now a party, brought the declaratory judgment action against the Parkers and the driver of the death vehicle, Floyd Dale Brown. Subsequently the Parkers and Brown filed third party actions against Associated Indemnity Corporation (Company on appeal), Frank B. Hall & Co., and another insurance company, not a present party. The parties were realigned by order of the trial court, with the Parkers and Brown designated as plaintiffs and Associated Indemnity Company and Frank B. Hall & Co. as defendants. The other insurance companies were no longer in the suit.

The crux of the present case lies in the denial of insurance coverage of Brown by Associated and Hall, the local agent of Associated. Associated cross-filed against its agent, Hall, alleging negligence, breach of agency contract, and/or exceeding the scope of the agent's authority.

Final judgment based on the earlier jury verdict established that Brown caused the death of the minor daughter when his pickup truck collided with her automobile. It is further undisputed that Associated did not provide defense representation for Brown.

The Parkers, who were assigned all rights of Brown against the defendants, bring three points of error. We are most concerned with the question whether the trial court erred in awarding ten peremptory jury strikes to defendants and only six to plaintiffs, and, if it was error, whether the allotment resulted in a materially unfair trial. *See* TEX.R.CIV.P. 233.

In *Patterson Dental Co. v. Dunn*, 592 S.W.2d 914 (Tex.1980), the Supreme Court recognized that a complaining party who has been wronged by an error in awarding of peremptory strikes theoretically has an overwhelming burden. That case established the rule requiring the complaining party to show that "the trial which resulted against him was materially unfair without having to show more." *Id.* at 921.

 Two cases following *Patterson,* and reaffirming the rule are *Lopez v. Foremost Paving, Inc.*, 709 S.W.2d 643, 644 (Tex.1986) and *Garcia v. Central Power & Light Co.*, 704 S.W.2d 734, 747 (Tex.1986). Whether an error in awarding strikes resulted in a materially unfair trial must be decided from an examination of the entire trial record. If the trial is hotly contested and evidence sharply conflicting, the error in awarding strikes results in a materially unfair trial without showing more. *Lopez v. Foremost Paving, Inc.*, 709 S.W.2d at 644, *citing Garcia v. Central Power & Light Co.*, 704 S.W.2d at 737.

In this case plaintiffs sought to hold Associated and its agent, Hall, liable as insurer of Brown. Both denied liability because of lack of coverage. There was testimony that an automobile leasing firm telephoned the Hall agency to confirm that Brown was covered before it leased him a new pickup

---

**1.** Repealed Acts 1985, 69th Leg., ch. 959. *See* TEX. CODES ANN., Civil Practice and Remedies Code § 37.001 *et seq.* (Vernon 1986).

truck; the salesman was told Brown was covered through his B.C. Electric Company policy. [He was president of the company.] On the other hand, Associated offered proof to establish it had caused Brown to be placed on an assigned risk plan and that the new leased pickup truck was not covered by any insurance policy. It was shown that this policy which was issued on July 10, 1976 (the same date the 1976 pickup was leased) covered only an "owned automobile" or a "temporary substitute automobile" and the new auto was neither. Associated further stated that Brown and his electric company failed to pay insurance premiums on the B.C. Electric policy and that it was not in effect on September 17, 1976, when the fatal collision occurred. Associated offered testimony that it mailed a notice of cancellation on August 3, 1976, of the original insurance policy, and thus, it was not in effect in September. Brown denied he received notice of cancellation or knew that he had been excluded as a driver under the policy. He testified he believed he had coverage. Brown's signed but *undated* exclusion was introduced in evidence. The Parkers argue the exclusion would not be valid even if he signed it.

The hotly contested issues were whether the insurance policy had been cancelled prior to the time of the fatal accident and, if not, whether Brown had been actually excluded as an insured driver under its terms.

In its cross-action against Hall, Associated alleged several acts of negligence as well as a breach of the agency agreement.

Associated offered proof of mailing the notice of cancellation by office procedures, that is, since the same office procedures were generally followed as to mailing letters, then the notice was probably mailed. Associated could not produce its file containing copies of the mailed notice. Hall testified that it received a copy of the notice on August 4, 1976. In addition to Brown saying he did not receive the notice, the leasing company, a named insured, denied receiving notice as required under customary insurance procedures. Associated presented evidence to show the notice of cancellation was mailed to the leasing company on August 16, 1976, the effective date of cancellation purporting to be August 13.

Evidence was introduced that Associated, as principal, received notice of the Parkers' claim through Hall, its agent, when a letter, alleged to be a demand for Brown's defense, was sent to Hall. This was a strongly contested issue in the case on which there was conflicting evidence. One of plaintiff's claims was for damages based on Associated's wrongful refusal to defend when there existed a duty to do so.

The trial court allocated six peremptory challenges to the Parkers and Brown together and five peremptory challenges each to Associated and Hall. The defendants were instructed not to collaborate on strike decisions.

■ In allocating peremptory challenges when multiple litigants are involved on one side of a lawsuit, a trial court must determine whether any of those litigants on the same side are antagonistic with respect to an issue of fact that the jury will decide. *Patterson Dental Co. v. Dunn, supra,* at 918. In determining whether antagonism exists, the trial court must consider the pleadings, information disclosed by pretrial discovery, information and presentations made during voir dire of the jury panel, and any other information brought to the attention of the trial court before the exercise of the strikes by the parties. *Id.* at 919. As noted in *Garcia, supra,* at 737 the pleadings are not the only factor.

■ Associated's cross-action against Hall alleged it was entitled to indemnity and/or contribution from Hall; its prayer was that the plaintiffs and/or Hall "recover nothing against" Associated. Any determination of indemnity, contribution, and subrogation is a question of law. *See Employers Casualty Co. v. Peterson,* 609 S.W.2d 579, 584 (Tex.Civ.App.—Dallas 1980, no writ). The indemnity/contribution issue would not be an issue submitted to the jury. The record discloses no allegation by either defendant that the other was

the sole cause of plaintiffs' damages, if any. A review of the record indicates that the parties defendant had a common purpose: to show the cancellation notice was mailed to Brown, that his insurance coverage under the company policy issued by Associated through its agent Hall was no longer in effect, and that Brown was not covered under that policy on the date of the fatal accident.

Antagonism does not always exist even if the parties on the same side may have different conflicts with the other side. In this case, the defendants centered their defense on the same issue: no insurance coverage on Brown. While Associated's motion for instructed verdict addressed their office mailing procedures to show that notice of cancellation had been mailed to Brown, Hall's motion for instructed verdict asserted bar by limitations. These motions were beneficial to both.

We conclude the parties defendant were not antagonistic to each other in the suit, nor, most importantly, had they demonstrated antagonism *prior to the selection of the jury.* The trial court thus erred in apportioning the peremptory challenges as it did. As previously noted, the trial was hotly contested and the evidence sharply conflicting. It is not required that the plaintiffs show more for this court to conclude the error resulted in a materially unfair trial.

Moreover, the plaintiffs, at the time of allocation of strikes, objected that they should have the equal number of strikes as the defendants. This was overruled. After submitting their list of jury strikes to the clerk, the plaintiffs moved for three additional strikes "because there are three individuals that we anticipate will be on the jury." They named the unwanted jurors and asked for the additional means to strike them. This was overruled. Two of the named individuals sat as jurors on the case. We hold under all the circumstances the error resulted in a materially unfair trial. We sustain the point of error.

Although our disposition of the Parkers' third point of error, requires reversal, we will address the two remaining arguments. In their first point of error the Parkers argue the trial court should have granted their motion for judgment notwithstanding the verdict because there was no evidence to support the finding that Associated mailed a notice of cancellation of the policy to B.C. Electric [Brown's company] at least ten days before September 17, 1976 [date of fatal collision]. In deciding a "no evidence" point, which is a question of law, we consider only that evidence and reasonable inferences therefrom which, viewed in its most favorable light, supports the jury finding, and we must reject all evidence or reasonable inferences to the contrary. *Glover v. Texas General Indemnity Company,* 619 S.W.2d 400, 401 (Tex.1981); *citing McClure v. Allied Stores of Texas, Inc.,* 608 S.W.2d 901, 904 (Tex.1980); *East Texas Theatres, Inc. v. Rutledge,* 453 S.W.2d 466, 467 (Tex.1970); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

A judgment may be entered notwithstanding the verdict when a directed verdict would have been proper. *Stout v. Clayton,* 674 S.W.2d 821, 824–25 (Tex.App. —San Antonio 1984, writ ref'd n.r.e.); TEX.R.CIV.P. 301. Thus, only where a finding has no support in the evidence may the trial court properly grant a judgment notwithstanding the verdict. *See Brooks v. Taylor,* 359 S.W.2d 539, 542 (Tex.Civ.App. —Amarillo 1962, writ ref'd n.r.e.).

In the present case, although there is conflicting evidence on the issue of the mailing of notice of cancellation, in applying the required standard of review, we find there is some evidence to support the jury's answer to Special Issue 1. The first point of error is overruled.

The second point is that the evidence is factually insufficient to support the jury's finding in the same special issue. When the contention of factual insufficiency of the evidence is made, this intermediate court is required to consider all the evidence [relevant to the challenged fact]. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *See* Calvert,

*"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX.LAW REV. 359 (1960).

In examining the evidence relevant to Special Issue 1, we remain cognizant that the jury as the trier of fact judged the credibility of the witnesses and the weight to be given their testimony. In this case, as mentioned, there was conflicting testimony and evidence regarding the mailing of the notice of cancellation. On review, we do not substitute our judgment for that of the jury even when the evidence is in conflict. Thus, in this case we cannot say the evidence is factually insufficient to support the answer of the jury. The second point of error is overruled.

The judgment is reversed and the cause remanded.