Terry VAN ALLEN, Denise Van Allen, Adam C. Albarado, Janet Albarado, Ian F. Brimble, Audrey S. Brimble, Raymond W. Buchanan, Patricia A. Buchanan, Higinia Cantu, Jr. Angela M. Cantu, Paul Davidson, Rhonda K. Davidson, David W. Dockens, Brenda J. Dockens, Robert L. Ellison, Judy L. Ellison, Kathryn F. Franklin, Anthony Harrison, Gloria Jean Harrison, Winford Holcomb, Jr., Mary Anne Holcomb, Patti J. Blair, Glenda G. Johnson, Todd A. Leach, Robin Leach, Mark Legge, Debra Lynn Legge, Wen F. Loh, Leng Log, Peter G. Long, Mark Magee, Laura D. Magee, Richard Maple, Amber R. Maple, Hilario Montalvo, Jr., Cheryl L. Montalvo, Mary D. Proudy, Ronnie Pruitt, Jennifer L. Pruitt, Gregory L. Purvis, Shari L. Purvis, Phillip Roddy, Linda D. Rosenbaum, Johnathan Stricklan, Lisa E. Stricklan, Trung Y. Tran, Le–Thu Thi Le Tran, Barbara Wells, Shane Wollam, and Summer L. Grieg, Appellants,

v.

Ben BLACKLEDGE, Robert B. Taylor, Kemah Oaks, Ltd., and Royce Homes, Inc., Appellees.

No. 14–99–00191–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 7, 2000.

Rehearing Overruled Jan. 26, 2001.

William E. King, Kemah, for appellants.

Nelson T. Hensley, Russell G. Burwell, Patricia Hair, Houston, for appellees.

Panel consists of Justices FOWLER, EDELMAN, and BAIRD.*

## O P I N I O N

### WANDA McKEE FOWLER, Justice.

Appellants, Terry Van Allen, Denise Van Allen, Adam C. Albarado, Janet Albarado, Ian F. Brimble, Audrey S. Brimble, Raymond W. Buchanan, Patricia A. Buchanan, Higinia Cantu, Jr. Angela M. Cantu, Paul Davidson, Rhonda K. Davidson, David W. Dockens, Brenda J. Dockens, Robert L. Ellison, Judy L. Ellison, Kathryn F. Franklin, Anthony Harrison, Gloria Jean Harrison, Winford Holcomb, Jr., Mary Anne Holcomb, Patti J. Blair, Glenda G. Johnson, Todd A. Leach, Robin Leach, Mark Legge, Debra Lynn Legge, Wen F. Loh, Leng Log, Peter G. Long, Mark Magee, Laura D. Magee, Richard Maple, Amber R. Maple, Hilario Montalvo, Jr., Cheryl L. Montalvo, Mary D. Proudy, Ronnie Pruitt, Jennifer L. Pruitt, Gregory L. Purvis, Shari L. Purvis, Phillip Roddy, Linda D. Rosenbaum, Johnathan Stricklan, Lisa E. Stricklan, Trung Y. Tran, Le–Thu Thi Le Tran, Barbara Wells, Shane Wollam, and Summer L. Grieg, all plaintiffs below, appeal from a take-nothing judgment entered against them following a jury finding in favor of the defendants and appellees herein, Ben Blackledge, Robert B. Taylor, Kemah Oaks, Ltd., and Royce Homes, Incorporated. Appellants contend that the trial court committed reversible error by denying the plaintiffs' motion for a mistrial following voir dire. We conclude that, during voir dire, the defendants were improperly given twice as many peremptory challenges as the plaintiffs. Because the plaintiffs were harmed by this inequitable allocation, we reverse and remand this case for a new trial.

### Background and Procedural History

Appellants are thirty-six homeowners and residents of the Kemah Oaks subdivision in the City of Kemah, Galveston County (the "homeowners"). In 1996, the homeowners filed suit against their subdivision, Kemah Oaks, Ltd., and its developers, Ben Blackledge and Robert B. Taylor (collectively, the "Kemah Oaks Defendants"), along with Royce Homes, Inc. ("Royce"), the company that built each of their residences. The homeowners' lawsuit alleged that the defendants were liable for breach of implied warranty, for violations of the Texas Deceptive Trade Practices and Consumer Protection Act (the "DTPA"), and for fraudulent or negligent misrepresentations made in connection with the sale of their homes.

The case was called for trial in late August of 1998. After a jury found that none of the defendants were liable under any theory asserted by the homeowners, the trial court entered a take-nothing judgment in the defendants' favor. This appeal followed.

### Plaintiffs' Motion for Mistrial

In their first point of error, the homeowners complain that the trial court erred by denying their motion for a mistrial after it was discovered that the defendants had coordinated their peremptory challenges. The homeowners contend that, because the trial court allowed the defendants to coordinate their challenges in an unfair manner, the trial court erred in allocating peremptory challenges among the parties as required by Rule 233 of the Texas Rules of Civil Procedure. In response, the appellees maintain that the challenges were properly allocated. The appellees argue further that, because the plaintiffs' objection on this issue was not timely, the homeowners have failed to preserve this issue for our review.

A trial court's denial of a motion for mistrial will not be disturbed on appeal except upon a showing of an abuse of discretion. *See City of Jersey Village v. Campbell,* 920 S.W.2d 694, 698 (Tex.App.— Houston [1st Dist.] 1996, writ denied).

* Former Justice Charles F. Baird sitting by assignment.

The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles or, stated another way, whether the court's action was arbitrary or unreasonable. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). A misinterpretation or misapplication of the law also is an abuse of discretion. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). We must, therefore, determine whether the trial court abused its discretion by allowing the defendants to coordinate their peremptory challenges in a manner inconsistent with Rule 233 of the Texas Rules of Civil Procedure.

### Allocation of Peremptory Challenges

■ Under Rule 233, each party in a civil action is entitled to six peremptory challenges (sometimes referred to as "strikes") in a case tried to the district court. *See* Tex.R. Civ. P. 233 (Vernon Supp.2000). In multiparty cases, it is the trial court's duty, before the exercise of peremptory challenges, to decide whether any of the litigants aligned on the same side of the docket are antagonistic with respect to any issue to be submitted to the jury. *See id.* In addition, upon the motion of any litigant in a multiparty case, it is also the trial court's duty to "equalize" the number of peremptory challenges so that no litigant or side is given an unfair advantage as a result of the alignment of the litigants and the award of peremptory challenges. *See id.* Thus, when multiple litigants are involved on one side of a lawsuit, the threshold question answered in allocating peremptory challenges is whether any of those litigants are antagonistic with respect to an issue of fact that the jury will decide. *See (Scurlock Oil Co. v. Smithwick,* 724 S.W.2d 1, 5 (Tex.1986); *Garcia v. Central Power & Light Co.,* 704 S.W.2d 734, 736 (Tex.1986); *Patterson Dental Co. v. Dunn,* 592 S.W.2d 914, 918

(Tex.1979)). If no antagonism exists, each side must receive the same number of challenges. *See Scurlock,* 724 S.W.2d at 5; *Garcia,* 704 S.W.2d at 736–37; *Patterson,* 592 S.W.2d at 919.

■ Here, the undisputed version of the events shows that, prior to jury selection, the trial court held a hearing in chambers to determine the number and apportionment of peremptory challenges among the parties. At this conference, the trial court apparently found that Royce and the Kemah Oaks Defendants had antagonistic interests. Counsel for the homeowners agreed that both of those defendants should receive six (6) peremptory challenges for a total of twelve (12) on that side. However, plaintiffs' counsel requested that these two defendants exercise their challenges separately. The trial court agreed with the plaintiffs and ordered the defendants to exercise their peremptory challenges "independently." [1] The defendants proceeded to exercise their peremptory challenges in separate rooms. Immediately after the jury was selected and the panel seated and sworn, but before any opening remarks were made, counsel for the homeowners moved for a mistrial on the grounds that the defendants violated the trial court's mandate to exercise their peremptory challenges independently and, instead, had improperly collaborated in making their peremptory strikes. Counsel for the homeowners pointed out that Royce had exercised all of its peremptory challenges from the bottom of the court's printed venire list, while all of the Kemah Oaks Defendants' challenges were made from the top of the list; as a result, the defendants made no double strikes. He then argued that the defendants had improperly coordinated their challenges to obtain an unfair advantage. The defendants maintained that each had exercised their challenges separately and that they

---

1. The trial court expressly recalled telling the defendants that counsel for Royce "was to do her own—independently strike the jurors," but that the Kemah Oaks Defendants, namely Blackledge and Taylor, could confer with each other.

had not conferred on any individual juror. However, the defendants did not deny that there was an agreement between them to divide the prospective panel in half and to strike from opposite ends of the list.[2] After hearing argument on the matter, the trial court denied the plaintiffs' motion for a mistrial.

The homeowners insist that the collaboration among the defendants gave the defendants twice as many peremptory challenges as the plaintiffs, and deprived plaintiffs of a fair trial. The Texas Supreme Court has recognized that, when defendants have collaborated on the exercise of their peremptory challenges such that no double strikes are made, this factor supports a finding that the defendants have used their ostensibly antagonistic positions unfairly. *See Lopez,* 709 S.W.2d at 645. Because, in this instance, the defendants have cooperated such that no double strikes were made, we hold it was error for the trial court to allow additional challenges to both of the defendants. *See id.; see also Vargas v. French,* 716 S.W.2d 625, 627 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.) (noting, after a review of the entire trial record, that there was "no antagonism" between defendants who had coordinated their peremptory challenges resulting in no double strikes).

### Preservation of Error

Nonetheless, Royce insists that, if the trial court erred in allowing the

defendants to collaborate in the exercise of peremptory challenges, the plaintiffs failed to preserve that error for review because they did not object in a timely manner. It is true that any error in the trial court's allocation of jury challenges among the parties must be preserved by a timely objection. *See Texas Commerce Bank Reagan v. Lebco Constructors, Inc.,* 865 S.W.2d 68, 77 (Tex.App.—Corpus Christi 1993, writ denied) (citing *In the Interest of T.E.T.,* 603 S.W.2d 793, 798 (Tex.1980); *Patterson Dental Co. v. Dunn,* 592 S.W.2d 914, 921 (Tex.1979); *Pouncy v. Garner,* 626 S.W.2d 337, 340 (Tex.App.—Tyler 1981, writ ref'd n.r.e.); *Ferguson v. Beal,* 588 S.W.2d 651, 655 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.)). In the Rule 233 context, the proper time to object to the trial court's allocation of peremptory challenges is at the same time that the determination of antagonism by the trial court should be made—after voir dire and prior to the exercise of the peremptory challenges allocated by the court. *See id.* (citing *Scurlock,* 724 S.W.2d at 5; *Garcia,* 704 S.W.2d at 736; and *Patterson,* 592 S.W.2d at 918).[3] In the present case, the homeowners did not object to the allocation of peremptory challenges until after the jury was selected, empaneled, and sworn. However, the lack of antagonism between the defendants was not apparent until after they had exercised their chal-

**2.** At oral argument, counsel for Royce conceded that the defendants had agreed to divide the jury list in half for the purpose of exercising peremptory challenges.

**3.** Royce contends that proper preservation of error on an issue related to allocation of peremptory challenges further requires the complaining party to make a showing that the jury panel selected included members which they would have struck, relying on *Annesley v. Tricentrol Oil Trading, Inc.,* 841 S.W.2d 908, 911 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (holding that, to preserve error in the equalization of peremptory jury challenges, a party must show that the jury panel included members that they would have struck); *Smith v. Christley,* 755 S.W.2d 525, 531 (Tex.App.—Houston [14th Dist.] 1988,

writ denied) (same). The Texas Supreme Court has held, however, that such a showing is required only when a challenge for *cause* is overruled, and not when the trial court improperly apportions peremptory challenges. *See Scurlock Oil Co. v. Smithwick,* 724 S.W.2d 1, 5 (Tex.1986) (citing *Garcia v. Central Power & Light Co.,* 704 S.W.2d 734 (Tex.1986)). Thus, to the extent that *Annesley* and *Christley* provide otherwise, those holdings are incorrect. Moreover, in this case, the homeowners do not argue that they lacked a sufficient number of challenges. Rather, the homeowners complain that defendants were allowed to coordinate their challenges to maximize the strikes they were given and to select a more favorable panel.

lenges. The jury selection process itself revealed the evidence of improper coordination between parties who were purportedly adverse. As soon as the homeowners became aware of the improper coordination, they moved for a mistrial on those grounds. Under these circumstances, we hold that error was not waived.

### Harm Analysis

Because the defendants were allowed to coordinate their peremptory challenges in violation of the trial court's requirement that they exercise those strikes independently, we must examine whether this error in the apportionment of challenges requires a reversal. Once error in the apportionment of peremptory jury challenges has been found, a reversal is required only if the complaining party can show that the trial was materially unfair. *See Garcia,* 704 S.W.2d at 737 (citing *Patterson,* 592 S.W.2d at 920). This showing is made from an examination of the entire trial record. *See id.* If the trial is hotly contested and the evidence sharply conflicting, the error in awarding peremptory challenges results in a materially unfair trial without showing more. *See id.; see also Lopez,* 709 S.W.2d at 644. As we explain below, this trial was hotly contested and involved conflicting evidence.

A review of the entire record in this case shows that, prior to trial, Royce filed a motion for summary judgment directed at the merits of the homeowners' claims but this motion was denied. The trial lasted for approximately two weeks. Over the course of seven days, the plaintiffs presented forty-eight (48) witnesses and offered ninety-two (92) exhibits. The defendants presented four (4) additional witnesses and a total of thirty-three (33) exhibits. During the course of the trial, the plaintiffs and defendants presented sharply conflicting evidence. For example, the plaintiffs presented evidence that the de-

fendants made representations about the financial advantage of purchasing a home in Kemah Oaks because those homes were not subject to municipal utility district ("MUD") taxes. The plaintiffs also presented proof that these representations turned out to be false. By contrast, the defendants disclaimed any knowledge that homes in Kemah Oaks were actually charged almost double the regular water rate because there was no MUD for that subdivision. In addition, the plaintiffs presented evidence to show that some of the defendants knew about a planned spoil site adjacent to Kemah Oaks before that subdivision was built. The plaintiffs also presented testimony that, if any of them had been told about the planned spoil site, they would not have purchased residences in Kemah Oaks. Royce denied having any knowledge of the spoil site prior to the time the plaintiffs' purchased their homes. Further, the plaintiffs presented evidence that their homes had decreased in value since the spoil site was established. In response, Royce presented evidence that property values remained consistently high after the spoil site was added. Both Royce and the Kemah Oaks Defendants filed motions for a directed verdict at the close of the plaintiffs' case.

After a hearing on those motions, the trial court granted a directed verdict, in part, as to some, but not all, allegations against Royce, and denied the motion for a directed verdict filed by the Kemah Oaks Defendants. Twenty-one (21) questions were ultimately submitted to the jury. The final verdict in the case was 10–1 in favor of the defendants.[4] Based on a review of the entire record, we find that the trial was hotly contested and that the evidence was sharply conflicting.

Given the contested and conflicting nature of the evidence, we find that the homeowners have met their burden to show that the trial court's decision to allow

---

4. One juror was excused by agreement during the course of the trial after she was in a car accident.

the defendants twice as many peremptory challenges as the plaintiffs rendered the trial materially unfair. We therefore find that, under these facts, the trial court abused its discretion in overruling the plaintiffs' motion for a mistrial. Accordingly, the appellants' first point of error is sustained, and the case is reversed and remanded for a new trial.

Because of our disposition of the homeowners' first point of error, we need not reach appellants' remaining points of error on appeal.