COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-277-CV
 
 
IN THE INTEREST OF
 
 
P.A. AND C.A., CHILDREN
 
 
------------
 
FROM THE 233RD DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
INTRODUCTION
        Appellant, 
the mother of P.A. and C.A., appeals from the trial court’s judgment 
terminating her parental rights to P.A. and C.A. In six issues, appellant 
complains that the trial court erred by not equalizing peremptory strikes 
between the attorney ad litem for the children and the Department of Family and 
Protective Services (DFPS); the loss of the parties’ peremptory strike lists 
and the jury identification cards prevented appellant from adequately presenting 
issue number one on appeal; the evidence is factually insufficient to show 
grounds for termination under family code sections 161.001(1)(D) and (E); the 
evidence is factually insufficient to show that termination of appellant’s 
parental rights was in the best interest of the children under family code 
section 161.001(2); and the trial court erred by allowing DFPS to call appellant 
as a witness when it had not designated appellant as a witness in its discovery 
responses.  We affirm.
EQUALIZATION OF PEREMPTORY CHALLENGES
        In 
her first issue, appellant complains that the trial court erred by not 
equalizing peremptory strikes between DFPS and the attorney ad litem for the 
children, P.A. and C.A.  Appellant contends that there was no antagonism 
between DFPS and the ad litem on the issues of “conduct,” “environment,” 
and “best interest” termination grounds; thus, the ad litem and DFPS were 
aligned on the same side against appellant.  DFPS argues that the trial 
court did not err in not equalizing strikes because the children were not 
parties to the suit.  According to DFPS, a trial court’s duty to equalize 
strikes involves limiting the number of strikes between parties.  
DFPS argues that because the children were not parties, the trial court was 
under no obligation to equalize the strikes between the ad litem for the 
children and DFPS. It follows, however, that if the children were not parties to 
the suit then the trial court erred by allowing the ad litem any peremptory 
strikes.  Thus, we must first determine to what extent the ad litem, as 
representative for the children in the termination suit, functions as a 
“party.”
        Under 
the family code, an attorney ad litem shall “participate in the conduct of the 
litigation to the same extent as an attorney for a party.”  Tex. Fam. Code Ann. § 107.003(1)(D) 
(Vernon Supp. 2004-05).  “No harm or violation of any Statute has been 
shown in allowing the attorney ad litem to make peremptory strikes, question the 
witnesses and argue to the jury.”  Priest v. Priest, 536 S.W.2d 
954, 955 (Tex. Civ. App.—Waco 1976, no writ).  Therefore, the trial court 
correctly allotted the ad litem her own peremptory strikes to exercise on behalf 
of the children.  However, upon appellant’s motion to equalize, the trial 
court, having allowed the ad litem strikes, was obligated to determine whether 
the ad litem was aligned with either side and then to equalize the strikes.  
Having held that the trial court did not err by allotting the ad litem 
peremptory strikes, we now review the trial court’s denial of appellant’s 
motion to equalize.
Standard of Review
        In 
civil cases, each party is entitled to six peremptory challenges in a case tried 
in the district courts.  Tex. R. Civ. 
P. 233.  In multiple party litigation, upon the motion of a party 
made prior to the exercise of any peremptory challenges, the court has the duty 
to equalize the number of peremptory strikes among the sides.  Id. In 
allocating peremptory challenges when multiple litigants are involved on one 
side of a lawsuit, the trial court must determine whether any of those litigants 
on the same side are antagonistic with respect to an issue of fact that the jury 
will decide.  Scurlock Oil Co. v. Smithwick, 724 S.W.2d 1, 5 (Tex. 
1986) (op. on reh’g); Garcia v. Central Power & Light Co., 704 
S.W.2d 734, 736 (Tex. 1986); Patterson Dental Co. v. Dunn, 592 S.W.2d 
914, 918 (Tex. 1979); see also Tex. 
R. Civ. P. 233.  The existence of antagonism is a question of law 
that is determined after voir dire and prior to the exercise of the parties’ 
strikes and is based upon information gleaned from pleadings, pretrial 
discovery, information and representations made during voir dire, and any other 
information brought to the trial court’s attention.  Scurlock, 724 
S.W.2d at 5; Garcia, 704 S.W.2d at 736-37; Patterson, 592 S.W.2d 
at 919.  If no antagonism exists, each side must receive the same number of 
strikes. Garcia, 704 S.W.2d at 736; Patterson, 592 S.W.2d at 918.
        DFPS 
contends that even if the children could be considered “parties,” the ad 
litem for the children was not aligned on the same side of the case as DFPS.  
Appellant, however, argues that the ad litem showed that she was aligned with 
DFPS because her questions at voir dire illustrated that she advocated 
termination of appellant’s parental rights.
        An 
attorney ad litem is appointed to represent the interests of the children who 
are the subject of a termination proceeding, not the interests of DFPS or the 
parents.  See Tex. Fam. Code 
Ann. § 107.001(2); see also Moore v. Moore, 898 S.W.2d 355, 359 
(Tex. App.—San Antonio 1995, no writ); Chapman v. Chapman, 852 S.W.2d 
101, 102 (Tex. App.—Waco 1993, no writ).  However, the interests of the 
children may be aligned with the parents or DFPS’s interests.  Therefore, 
we must determine whether the trial court erred in finding that the ad litem and 
DFPS were not aligned on the same “side.”  “The term 'side' . . . is 
not synonymous with 'party,' 'litigant,' or 'person.'  Rather, 'side' means 
one or more litigants who have common interests on the matters with which the 
jury is concerned.”  Tex. R. Civ. 
P. 233.  Accordingly, we review all the information brought to the 
trial court’s attention prior to the exercise of the parties’ strikes, 
including, but not limited to, pleadings, pretrial discovery, and other 
information and representations made during pretrial hearings and voir dire.
        Here, 
a review of the pleadings reveals that DFPS asked the jury to terminate 
appellant’s parental rights on the grounds that termination was in the 
children’s best interest and that she violated one or more of the provisions 
of family code 161.001(1).[2]  With regard to the 
children’s father, the jury was asked to terminate his parental rights because 
it was in the best interest of the children and he violated one or more of the 
provisions of family code 161.001(1).  Tex. Fam. Code Ann. § 161.001(1).  
DFPS’s pleadings made it clear that it sought termination of both parents’ 
rights.[3]  The ad litem filed no pleadings in 
this case.
        During 
the pre-trial hearing, appellant made an oral motion to equalize peremptory 
challenges.  In response to the trial court’s questions regarding 
possible alignment between DFPS and the ad litem, the ad litem stated that 
“obviously, I’m concerned with the best interest of the children . . . . As 
far as being aligned with [DFPS] at this point in time, you know . . . I 
haven’t heard all the evidence in the case, so I don’t know all the 
allegations they have . . . . I really can’t say at this time that I’m 
aligned with the State.”  DFPS stated “I don’t believe that we’re 
aligned at all.  I’ve got . . . . all these people wanting different 
things, and, to me, that doesn’t stack up to alignment.”  DFPS 
continues saying, “Sometimes I have an ad litem standing next to me urging me 
for the termination, Do it, do it.  You know, I’ve got that sort of 
situation.  But I don’t really have that situation in this [case].”
        During 
voir dire, the ad litem’s first questions to the venire focused on finding 
jurors who would be capable of sitting in judgment of a parent in a termination 
case and be capable of terminating parental rights if the State proved its case 
by clear and convincing evidence.  Next, the ad litem asked the potential 
jurors if they would have difficulty believing a young child’s version of 
events in such a case.  The ad litem also asked the potential jurors about 
their preconceptions regarding children’s veracity and capability for lying 
and whether the jurors thought a child might tell the truth about important or 
serious things that happen to them.  She inquired whether the potential 
jurors would give credence to a child psychologist’s opinion and whether a 
sexually abused child might exhibit behavioral or emotional problems.  The 
ad litem asked the jurors what would be an appropriate reaction from a mother 
who was told by her child that she was sexually abused and whether the mother 
would be obligated to investigate the allegation further.  With regard to 
children’s responses to sexual abuse, the ad litem asked the potential jurors 
whether they agreed that children might have shame or be uncomfortable talking 
about sexual abuse and how it might affect a child if he or she were not 
believed.  The ad litem concluded voir dire by asking whether any of the 
potential jurors believed that sexual abuse “doesn’t really happen.”
        After 
voir dire, appellant reurged her motion for equalization and argued that the ad 
litem and DFPS were aligned on the grounds for termination, but not necessarily 
best interest.  Appellant contended that it was evident from the ad 
litem’s voir dire questions that she thought there were grounds for 
terminating appellant’s parental rights.  DFPS responded saying,
 
I just didn’t hear anything in [the ad litem’s] voir dire that would suggest 
we are aligned.  I mean, she wants what’s in the best interest of the 
children, obviously.  And she’s looking for jurors that are going to—to 
help meet that end for the children, whatever it is, and I just—I don’t 
believe that we are aligned today.
 
 
The ad litem responded 
saying,
 
I don’t know what [appellant’s] meaning that I am aligned with [DFPS].  
I thought that I asked questions to try to ferret out jurors who, you know, 
would look at all the evidence in the case.  You know, I asked some defense 
questions, I asked some probably questions that could be construed as prosecutor 
questions.
 
But I 
can’t—I don’t think at this point you can—I’m not sure that 
I’m—you know, in picking—that my motive in picking the jury panel are 
going to be the same as the State’s made. . . . I truly don’t believe that 
you could say at this point I’m aligned [with DFPS].”
 
 
        Appellant 
argues in her brief that during closing arguments, “True to her voir dire, the 
guardian ad litem for the children also advocated terminating [appellant’s] 
parental rights.”  Appellant concludes that this is proof that the ad 
litem was aligned with DFPS at the time of voir dire.  We disagree.  
The determination of alignment of parties is to be made on the basis of the 
pleadings and from information disclosed during pretrial procedures and other 
information that has been specifically called to the attention of the court.  
Perkins v. Freeman, 518 S.W.2d 532, 534 (Tex. 1974).  “Although 
hindsight is often better than foresight, the action of a trial court in 
apportioning strikes must of necessity be evaluated in terms of information 
available at the time the challenges are allocated not on the basis of changes 
in the alignment of parties which may possibly occur thereafter during the 
course of the trial.”  Lubbock Mfg. Co. v. Perez, 591 S.W.2d 907, 
921(Tex. Civ. App.—Waco 1979, writ dism’d by agr.).  A review of the ad 
litem and DFPS’s statements to the trial court that they were not aligned at 
the time they exercised their strikes, pleadings, pretrial proceedings, and voir 
dire convinces us that the trial court did not err in finding that the ad litem 
and DFPS were not aligned at the time the strikes were made.  Thus, the 
trial court did not err by denying appellant’s motion to equalize the 
peremptory challenges.  We overrule appellant’s first issue.
MISSING JURY INFORMATION CARDS AND PEREMPTORY STRIKE 
LISTS
        In 
her second issue, appellant complains that because the parties’ peremptory 
strike lists and the jury identification cards were destroyed by the trial court 
and cannot be reconstructed, she was prevented from demonstrating harm with 
regard to issue one.  However, because we hold in issue one that the trial 
court did not err in finding that the parties were not aligned at the time they 
exercised their strikes and that the trial court did not err by denying 
appellant’s motion to equalize the peremptory challenges, appellant’s second 
issue regarding harm is moot.  Accordingly, we need not address it.  See 
Tex. R. App. P. 47.1.
FACTUAL SUFFICIENCY
        In 
her third and fourth issues, appellant complains that the evidence is factually 
insufficient to show grounds for termination under family code sections 
161.001(1)(D) (knowingly placed or knowingly allowed the child to remain in 
conditions or surroundings which endanger the physical or emotional well-being 
of the child) and 161.001(1)(E) (engaged in conduct or knowingly placed the 
child with persons who engaged in conduct which endangers the physical or 
emotional well-being of the child).  Tex. 
Fam. Code Ann. § 161.001(1)(D), (E).
Standard of Review
        A 
parent’s rights to “the companionship, care, custody and management” of 
his or her children are constitutional interests “far more precious than any 
property right.”  Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S. 
Ct. 1388, 1397 (1982).  “While parental rights are of constitutional 
magnitude, they are not absolute.  Just as it is imperative for courts to 
recognize the constitutional underpinnings of the parent-child relationship, it 
is also essential that emotional and physical interests of the child not be 
sacrificed merely to preserve that right.”  In re C.H., 89 S.W.3d 
17, 26 (Tex. 2002).  In a termination case, the State seeks not just to 
limit parental rights but to end them permanently—to divest the parent and 
child of all legal rights, privileges, duties, and powers normally existing 
between them, except for the child’s right to inherit.  Tex. Fam. Code Ann. § 161.206(b) 
(Vernon Supp. 2004-05); Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985).  
We strictly scrutinize termination proceedings and strictly construe involuntary 
termination statutes in favor of the parent.  Holick, 685 S.W.2d at 
20-21; In re D.T., 34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2000, pet. 
denied) (op. on reh’g).
        In 
proceedings to terminate the parent-child relationship brought under section 
161.001 of the family code, the petitioner must establish one or more of the 
acts or omissions enumerated under subdivision (1) of the statute and must also 
prove that termination is in the best interest of the child.  Tex. Fam. Code Ann. § 161.001(1); Richardson 
v. Green, 677 S.W.2d 497, 499 (Tex. 1984); Swate v. Swate, 72 S.W.3d 
763, 766 (Tex. App.—Waco 2002, pet. denied).  Both elements must be 
established; termination may not be based solely on the best interest of the 
child as determined by the trier of fact.  Tex. Dep’t of Human Servs. 
v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).
        Termination 
of parental rights is a drastic remedy and is of such weight and gravity that 
due process requires the petitioner to justify termination by “clear and 
convincing evidence.”  Tex. Fam. 
Code Ann. §§ 161.001, 161.206(a); In re G.M., 596 S.W.2d 846, 
847 (Tex. 1980).  This intermediate standard falls between the 
preponderance standard of ordinary civil proceedings and the reasonable doubt 
standard of criminal proceedings.  G.M., 596 S.W.2d at 847; D.T., 
34 S.W.3d at 630.  It is defined as the “measure or degree of proof that 
will produce in the mind of the trier of fact a firm belief or conviction as to 
the truth of the allegations sought to be established.”  Tex. Fam. Code Ann. § 101.007 (Vernon 
2002).
        The 
higher burden of proof in termination cases alters the appellate standard of 
factual sufficiency review.  In re C.H., 89 S.W.3d at 25.  
“[A] finding that must be based on clear and convincing evidence cannot be 
viewed on appeal the same as one that may be sustained on a mere 
preponderance.”  Id.  In considering whether the evidence of 
termination rises to the level of being clear and convincing, we must determine 
“whether the evidence is such that a fact finder could reasonably form a firm 
belief or conviction” that the grounds for termination were proven.  Id.  
Our inquiry here is whether, on the entire record, a fact finder could 
reasonably form a firm conviction or belief that the parent violated one of the 
conduct provisions of section 161.001(1) and that the termination of the 
parent’s parental rights would be in the best interest of the child.  Id. 
at 28.
Background Facts
        Appellant 
is P.A. and C.A.’s mother.  When C.A. was three years’ old, C.A. made 
an outcry of sexual abuse against “David.”  C.A. claimed that David had 
licked her vagina.  Appellant and her boyfriend David Leach lived together 
at the time of the allegations.  C.A. lived with her biological father when 
she made the allegation.  Although DFPS focused on David Leach as the 
perpetrator of C.A.’s sexual abuse, appellant contends that C.A. also knew 
David Hammer (C.A.’s paternal grandmother’s boyfriend) and that he could 
have been the abuser.
        In 
addition to being the alleged abuser of C.A., David Leach was also a multiple 
felon whose parole requirements prohibited him from being around children 
without supervision.  Appellant admitted that she was a “heavy“ alcohol 
abuser and that she used methamphetamines and marijuana around P.A. and C.A. and 
while she was pregnant with her most recent child.  Additionally, even 
after C.A. identified Leach as her abuser, appellant refused to move away from 
Leach as required by DFPS service plan.  Instead, appellant married Leach 
on May 9, 2003, approximately a month before this case went to trial.  The 
trial court terminated appellant’s parental rights to C.A. and P.A. on 
endangerment by conduct and environment, and best interest grounds.
Endangering Environment and Course of Conduct
        In 
challenging the factual sufficiency of the jury’s findings on endangerment by 
conduct and environment, appellant primarily focuses on the sufficiency of the 
evidence to support C.A.’s allegation that Leach sexually molested her.  
A finding that appellant endangered the children by allowing Leach to live with 
them, however, was not dependent upon a finding that Leach sexually abused C.A.  
See In re R.W., 129 S.W.3d 732, 742-43 (Tex. App.—Fort Worth 2004, pet. 
denied) (holding that despite father’s contention that the allegation of 
sexual abuse was dubious, the jury was free to believe that father did in fact 
sexually abuse child).  The evidence presented at trial showed that 
appellant endangered the children by leaving them alone with Leach.  Leach 
was a multiple felon whose express parole provisions prohibited him from being 
around children without supervision.
        Regardless 
of the fact that a finding of sexual abuse was not required, DFPS still 
presented ample evidence from which the jury could have found that Leach had 
abused C.A.  C.A. made multiple outcries to appellant, family, and hospital 
workers saying that “David had licked me right down there on my body,” and 
David “sucked me,” pointing to her genitals.  During a videotaped 
interview with a DFPS worker, C.A. identified David as “my Mom’s 
boyfriend.”  Appellant was aware that Leach had a prior sexual offense 
and that the terms of his parole prohibited him from being around children, but 
she nonetheless allowed Leach to continue to live with her and the children and 
to be alone with the children while appellant was at work.
        Other 
evidence supported that C.A. had been abused.  For example, she was 
sexually acting out before she was removed from the home and after she entered 
foster care.  C.A. identified Leach, not David Hammer, as her abuser to the 
rape exam nurse, her father, her mother, and foster mother.  C.A. also 
responded negatively to Leach during a visitation after she was removed.
        With 
regard to her own conduct, appellant admitted to using drugs while the children 
were in the house.  The children’s father testified that he and appellant 
took speed in the house for a three to five month period ending in March 2001.  
Appellant testified that she and the children’s father smoked and injected 
methamphetamine while the children were in the house.  Sometimes appellant 
would get high on drugs and stay awake for days at a time.  Prior to using 
methamphetamine, both appellant and the children’s father smoked marijuana on 
a regular basis.
        Appellant 
failed to complete the requirements of the DFPS service plan. Dione Simmons, a 
DFPS caseworker, testified that appellant had not done what was required by the 
department in order to keep her children.  Simmons also observed that 
appellant had not learned anything that would help her protect her children from 
sexual abuse.  Although appellant’s service plan required that she not 
live with Leach, she refused to move away from him, and eventually married him 
just before trial.  Appellant also failed to complete her required 
individual counseling sessions and failed to attend a required class for the 
parents of sexual abuse victims.  Appellant admitted at trial that she also 
had not provided financial assistance to her children following their removal.
        After 
a review of the entire record, we hold that the evidence was factually 
sufficient to support a finding that appellant knowingly placed or knowingly 
allowed her children to remain in conditions or surroundings which endangered 
their physical or emotional well-being and engaged in conduct or knowingly 
placed her children with persons who engaged in conduct which endangered their 
physical or emotional well-being.  Tex. 
Fam. Code Ann. § 161.001(1)(D), (E).  Appellant’s third and 
fourth issues are overruled.
Best Interest
        In 
her fifth issue, appellant complains that the evidence is factually insufficient 
to support the finding, under family code section 161.001(2), that termination 
of appellant’s parental rights was in the best interest of the children.  
See id. § 161.001(2).
        The 
nonexclusive factors that the trier of fact in a termination case may use in 
determining the best interest of the child include:
        (1)    the 
desires of the child;
 
        (2)    the 
emotional and physical needs of the child now and in the future;
 
        (3)    the 
emotional and physical danger to the child now and in the future;
 
        (4)    the 
parental abilities of the individuals seeking custody;
 
        (5)    the 
programs available to assist these individuals to promote the best interest of 
the child;
 
        (6)    the 
plans for the child by these individuals or by the agency seeking custody;
 
        (7)    the 
stability of the home or proposed placement;
 
        (8)    the 
acts or omissions of the parent which may indicate that the existing 
parent-child relationship is not a proper one; and
 
        (9)    any 
excuse for the acts or omissions of the parent.

Holley v. Adams, 
544 S.W.2d 367, 371-72 (Tex. 1976).  These factors are not exhaustive; some 
listed factors may be inapplicable to some cases; other factors not on the list 
may also be considered when appropriate.  C.H., 89 S.W.3d at 27.  
Furthermore, undisputed evidence of just one factor may be sufficient in a 
particular case to support a finding that termination is in the best interest of 
the children.  Id.  On the other hand, the presence of scant 
evidence relevant to each Holley factor will not support such a finding.  
Id.
        Here, 
DFPS presented ample evidence to show that termination of appellant’s parental 
rights is in the best interest of the children.  For example, DFPS showed 
that appellant failed to complete her service plan, insisted on exposing her 
children to C.A.’s alleged sexual abuser, abused drugs and alcohol, failed to 
financially support her children, and was unable to deal with C.A.’s sexual 
abuse.  See id. at 27-28.  Additionally, DFPS caseworker Dione 
Simmons testified that, in her opinion, termination of appellant’s rights was 
in the children’s best interest.  She stated that DFPS had plans to seek 
adoption for the children and to keep them together.  In Simmons’s 
opinion, the children were “very adoptable.”  The children’s behavior 
had also improved since entering foster care and at the time of trial the 
children had stopped acting out sexually and their “behavior [had] calmed down 
tremendously.”
        We 
hold that the evidence was factually sufficient to support a finding that 
termination of appellant’s parental rights was in the children’s best 
interest.  Appellant’s fifth issue is overruled.
APPELLANT AS A DFPS WITNESS
        In 
her sixth issue, appellant complains that the trial court erred by allowing DFPS 
to call appellant as a witness when it had not designated appellant as a witness 
in its discovery responses.  In support of her argument, appellant relies 
upon Texas Rule of Civil Procedure 193.6, which provides that:
  
A party who fails to make, amend, or supplement a discovery response in a timely 
manner may not introduce in evidence the material or information that was not 
timely disclosed, or offer the testimony of a witness (other than a named party) 
who was not timely identified, unless the court finds that:
(1) 
there was good cause for the failure to timely make, amend, or supplement the 
discovery response; or
(2) the 
failure to timely make, amend, or supplement the discovery response will not 
unfairly surprise or unfairly prejudice the other parties.
 
Tex. R. Civ. P. 193.6.
        Appellant 
contends that because DFPS did not designate her as a witness in its discovery 
responses and did not show good cause for its failure to timely designate her as 
a witness, DFPS should not have been allowed to call appellant to testify.  
In the petition to terminate appellant’s parental rights, appellant is listed 
under the heading “Parties to be Served.”  Appellant’s argument 
regarding good cause ignores that appellant is a named party to the termination 
suit for all purposes.  A named party is an exception to the requirements 
of rule 193.6.  Id.  Thus, because appellant was a named party, 
DFPS was not required to designate her as a witness in its discovery responses 
before calling her to testify.  See id.  Appellant’s sixth 
issue is overruled.
CONCLUSION
        Having 
overruled all of appellant’s issues we affirm the trial court’s judgment.
 
 
                                                                  SAM 
J. DAY
                                                                  JUSTICE
 
 
PANEL A: WALKER and MCCOY, J.J.; and SAM J. DAY, 
J. (Retired, Sitting by Assignment).
 
DELIVERED: October 21, 2004

 
NOTES
1.  See 
Tex. R. App. P. 47.4.
2.     
(1) knowingly placed or knowingly allowed the child to remain in conditions or 
surroundings which endanger the physical or emotional well-being of the child;
        (2) 
engaged in conduct or knowingly placed the child with persons who engaged in 
conduct which endangers the physical or emotional well-being of the child;
        (3) 
executed before or after the suit is filed an unrevoked or irrevocable affidavit 
of relinquishment of parental rights;
        (4) 
constructively abandoned the child who has been in the permanent or temporary 
managing conservatorship of DFPS for not less than six months, and DFPS has made 
reasonable efforts to return the child to the parent, the parent has not 
regularly visited or maintained significant contact with the child and the 
parent has demonstrated an inability to provide the child with a safe 
environment.
  
Tex. Fam. Code Ann. §§ 161.001(1)(D), 
(E), (K), (N) (Vernon 2002).
3.  
The children’s father does not appeal from the termination of his parental 
rights.