COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-104-CV
 
 
 
IN THE INTEREST OF M.N.G.
 
 
 
------------
 
FROM THE 323RD DISTRICT COURT OF 
TARRANT COUNTY
 
------------
 
OPINION ON REHEARING**
 
------------
        We 
deny appellant's motion for rehearing. We withdraw our opinion and judgment of 
July 1, 2004 and substitute the following to clarify some factual issues raised 
by appellant’s motion for rehearing. The result has not been modified.
INTRODUCTION
        Janice 
H. appeals the trial court’s order terminating her parental rights regarding 
her child M.N.G. In eight points, appellant complains that: (1) the trial court 
erred by denying her motion to dismiss; (2) the trial court erred by not 
equalizing peremptory challenges between appellant on one side, and the Texas 
Department of Family and Protective Services (DFPS) and the attorney ad litem on 
the other; (3) the trial court erred by denying appellant’s motion for 
mistrial after appellant showed that the other parties were aligned and had 
coordinated their strikes; (4) she received ineffective assistance of counsel at 
trial because trial counsel did not preserve error on appellant’s second and 
third issues; (5) the evidence is factually insufficient to support the trial 
court’s finding that termination of the parent-child relationship was in the 
child’s best interest; (6) the evidence is legally insufficient to support 
termination under section 161.001(1)(D) of the family code; (7) the evidence is 
legally insufficient to support termination under section 161.001(1)(E) of the 
family code; and (8) as applied to appellant, section 161.001(1)(M) of the 
family code is an ex post facto and retroactive law that violates the 
Texas Constitution. Tex. Fam. Code. Ann. 
§ 161.001(1)(D), (E), (M) (Vernon 2002). We affirm.
FACTS
        Appellant 
had four children prior to giving birth to M.N.G. in 2001. Appellant’s rights 
to her oldest child, H.W., were terminated in April 1990. Years later, DFPS 
filed an original petition to terminate appellant’s parental rights to her 
three remaining children, D.H., M.H., and L.H. (cause number 323-67629J-00). On 
May 24, 2001, while the termination proceeding was pending, appellant gave birth 
to M.N.G. DFPS immediately received a referral regarding M.N.G., alleging that 
appellant had tested positive for barbiturates. DFPS later determined that the 
allegation was false.
        Regardless, 
on May 31, 2001, DFPS amended its original petition in the pending case (cause 
number 323-67629J-00) to include M.N.G. because it was concerned about 
appellant’s ability to maintain stable housing and employment. The court 
signed an order appointing DFPS temporary managing conservator of M.N.G. that 
same day. In June of 2001, M.N.G. left the hospital and went directly into 
foster care. On July 9, 2001, appellant’s rights to D.H., M.H., and L.H., but 
not M.N.G., were terminated. On appellant’s motion, the trial court severed 
the cause involving M.N.G. on July 11, 2001 and assigned it a separate case 
number (cause number 323-69693J-01).
        DFPS 
acted as M.N.G.’s temporary managing conservator while M.N.G remained in 
foster care. Nothing else happened in the severed suit regarding M.N.G. until 
March 21, 2002 when DFPS filed a third amended petition. The third amended 
petition alleged new facts and requested that appellant’s parental rights to 
M.N.G. be terminated because the rights to her other children had recently been 
terminated. On April 2, 2002, appellant filed a petition for writ of habeas 
corpus in the trial court seeking to regain M.N.G. on the grounds that the 
previous lawsuit (cause number 323-67629J-00) had been dismissed and no 
subsequent action had been filed. Basically, appellant had claimed that the 
trial court lost jurisdiction because no final order had been entered since the 
child’s removal approximately eleven months prior. Appellant claimed that the 
trial court lost jurisdiction on July 10, 2002. The trial court denied her 
habeas relief contra Texas Family Code section 263.401 that generally requires a 
trial court to dismiss a suit affecting the parent-child relationship if it has 
not been finalized within one year. Tex. 
Fam. Code Ann. § 263.401 (Vernon 2002).
        On 
April 5, 2002, DFPS filed yet another new petition with a new cause number 
(cause number 323-71676J-02) and the trial court again appointed DFPS temporary 
managing conservator of M.N.G. Appellant moved to dismiss cause number 
323-71676J-02 on January 27, 2003 alleging that it had been more than a year 
since DFPS was named managing conservator of M.N.G. See Tex. Fam. Code Ann. § 263.401(a). The 
trial court conducted a hearing and denied appellant’s motion.
        The 
case in cause number 323-71676J-02 went to trial on March 17, 2003 (within the 
statutory one-year limit in the new cause number 323-71676J-02). The trial court 
terminated appellant’s rights to M.N.G. on April 4, 2003 under Texas Family 
Code sections 161.001(1)(D), (E), and (M), despite the fact that M.N.G. had 
never been in appellant’s care. Tex. 
Fam. Code Ann. § 161.001(1)(D), (E), (M). This appeal involves only 
cause number 323-71676J-02. Neither of the prior two cases, cause number 
323-67629J-00 or cause number 323-69693J-01, have been appealed by appellant.[1]
MOTION TO DISMISS
        In 
her first point, appellant complains that the trial court erred by denying her 
motion to dismiss. The motion alleges as grounds for dismissal the failure of 
DFPS to comply with the procedural requirements of Texas Family Code section 
263.401. Tex. Fam. Code Ann. § 
263.401(a). This section requires a trial court to dismiss a suit affecting the 
parent-child relationship if it fails to render a final order or grant an 
extension on the first Monday following the anniversary date that the court 
appointed DFPS as temporary managing conservator.[2]  
Id.
        DFPS 
was appointed the temporary managing conservator of M.N.G. under the case 
appealed, cause number 323-71676J-02, on April 5, 2002. Appellant contends that 
we should calculate the dismissal date under section 263.401 from the date DFPS 
was first appointed temporary managing conservator of M.N.G. on May 31, 2001 in 
cause number 323-67629J-00. If we use this date, the first dismissal date 
relating to cause number 323-67629J-00 is June 3, 2002. See In re Bishop, 
8 S.W.3d 412, 420-21 (Tex. App.—Waco 1999, no pet.). Appellant argues that the 
statutory timetable under section 263.401 expired then. However, before the June 
3, 2002 deadline DFPS had abandoned its initial suit involving M.N.G.[3]  On April 5, 2002, DFPS had filed a new lawsuit (in 
cause number 323-71676J-02) in which it again sought to terminate appellant’s 
parental rights to M.N.G.
        A 
dismissal under section 263.401(a) is without prejudice so that DFPS may refile 
the case asserting the same grounds for termination as originally alleged. In 
re Ruiz, 16 S.W.3d 921, 927 (Tex. App.—Waco 2000, no pet.).  However, 
DFPS cannot keep a child in foster care absent new facts supporting removal from 
the home.  Id. As we noted, DFPS may reinitiate proceedings for 
termination of parental rights following a dismissal, despite the statutory time 
limitation, if new facts are alleged justifying relief on the same grounds 
averred in the first action. In re L.J.S., 96 S.W.3d 692, 694 (Tex. 
App.—Amarillo 2003, pet. denied); Ruiz, 16 S.W.3d at 927-28. Here, DFPS 
did just that. We believe these same principles apply when DFPS abandons, rather 
than dismisses, the initial case.
        The 
petition in cause number 323-71676J-02 that DFPS filed on April 5, 2002, alleged 
some new facts and grounds for termination and was supported by a new affidavit. 
Under the heading “Required Information” DFPS included two new paragraphs. 
The first requested that the court waive the requirements of a service plan and 
reasonable efforts to return M.N.G. to appellant and instead accelerate the 
trial. The second paragraph requested that the court find that M.N.G. had been 
subjected to aggravated circumstances because appellant’s parental rights had 
been involuntarily terminated with regard to another child due to appellant’s 
violation of family code section 161.001(1)(D) (conditions which endanger the 
child), (E) (endangering course of conduct) or a substantially equivalent 
provision of another state’s law. See Tex. Fam. Code Ann. § 161.001(1)(M) 
(allowing termination of the parent-child relationship based on a finding that 
the parent's conduct was in violation of section 161.001(1)(D) or (E) or 
substantially equivalent provisions of the law of another state).
        In 
the new affidavit, DFPS caseworker Stephanie Duren states that M.N.G. is now in 
foster care instead of the hospital and that DFPS has participated in other 
litigation concerning M.N.G.’s custody. Duren’s new affidavit reflects 
additional details regarding prior investigations of appellant for abuse of 
other children. For example, Duren notes that appellant’s rights to all four 
of her other children have been terminated. The rights to appellant’s first 
child, H.W., were terminated in 1990 under the statutory precursor to sections 
161.011(1)(D) and (E) of the family code.[4]  
Later, DFPS filed a petition to terminate appellant’s rights to D.H., M.H., 
and L.H. under section 161.001(1)(D) and (E) of the family code. After appellant 
executed an affidavit of relinquishment as to these three children, the trial 
court terminated appellant’s parental rights and found that termination was in 
the best interest of the children.
        Further, 
Duren states that appellant is employed, but does not work much and only 
receives a small check. Duren pointed out that appellant’s living situation 
was not stable.  At the time Duren made the affidavit, appellant was living 
with a woman who wanted her to move out and told Duren that appellant and M.N.G. 
would not be welcome there if appellant gets custody of M.N.G.  Finally, 
Duren describes the procedural history of the case, possible placement options, 
M.N.G.’s custodial situation, medical and developmental treatment, visitation, 
and counseling. Very little of this information was included in Duren’s 
affidavits supporting the termination petitions in the prior cause numbers.
        In 
light of the above information, we conclude that DFPS pled additional facts 
sufficient to support refiling the termination proceeding against appellant. See 
L.J.S., 96 S.W.3d at 694; Ruiz, 16 S.W.3d at 927-28. Because DFPS 
filed a new cause, alleging new facts, before the statutory period relating to 
the May 31, 2001 order expired, the trial court did not err by entering new 
orders appointing DFPS temporary managing conservator of M.N.G. Consequently, 
DFPS was not required to return M.N.G. to appellant because, for the purposes of 
appeal in cause number 323-71676J-02, the final order in this cause was entered 
by the Monday following the one-year deadline. See Tex. Fam. Code Ann. § 263.401(d)(1) 
(requiring the return of the child if more than a year has passed since the 
trial court ordered the department (DFPS) to serve as temporary managing 
conservator of the child).  For the purposes of cause number 323-71676J-02, 
we conclude that the statutory one year limitation of section 263.401 began to 
run on April 5, 2002, the date that the trial court entered the order appointing 
DFPS temporary managing conservator of M.N.G. in that cause. See Tex. Fam. Code Ann. § 263.401(a); In 
re L.J.S., 96 S.W.3d at 694.  Therefore, we hold that the trial court 
did not err by denying appellant’s motion to dismiss in cause number 
323-71676J-02. Appellant’s first point is overruled.
EQUALIZATION OF PEREMPTORY STRIKES AND MOTION FOR 
MISTRIAL
        In 
her second and third points, appellant complains that the trial court erred by 
not equalizing the peremptory strikes between appellant on one side, and DFPS 
and the attorney ad litem for M.N.G. on the other, and by denying her motion for 
mistrial after she showed that the other parties were aligned and had 
coordinated their strikes. The State contends that appellant did not make a 
timely objection to the use of the strikes and thus waived any error relating to 
these points.
        We 
review the trial court’s denial of appellant’s motion for mistrial under an 
abuse of discretion standard. In re J.A., 109 S.W.3d 869, 874 (Tex. 
App.—Dallas 2003, pet. denied); City of Jersey Village v. Campbell, 920 
S.W.2d 694, 698 (Tex. App.—Houston [1st Dist.] 1996, writ denied). 
To determine whether a trial court abused its discretion, we must decide whether 
the trial court acted without reference to any guiding rules or principles, in 
other words, whether the act was arbitrary or unreasonable. See Carpenter v. 
Cimarron Hydrocarbons Corp., 98 S.W.3d 682, 687 (Tex. 2002); Downer v. 
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert. 
denied, 476 U.S. 1159 (1986). Merely because a trial court may decide a 
matter within its discretion in a different manner than an appellate court would 
in a similar circumstance does not demonstrate that an abuse of discretion has 
occurred. Downer, 701 S.W.2d at 241-42.
        An 
abuse of discretion does not occur where the trial court bases its decisions on 
conflicting evidence. Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978); 
see also Goode v. Shoukfeh, 943 S.W.2d 441, 446 (Tex. 1997). Furthermore, an 
abuse of discretion does not occur as long as some evidence of substantive and 
probative character exists to support the trial court’s decision. Butnaru 
v. Ford Motor Co., 84 S.W.3d 198, 211 (Tex. 2002); Holley v. Holley, 
864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ 
denied). However, a misinterpretation or misapplication of the law also is an 
abuse of discretion. See Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 
1992). We must, therefore, determine whether the trial court abused its 
discretion by allowing DFPS and the ad litem to coordinate their peremptory 
challenges in a manner inconsistent with rule 233 of the Texas Rules of Civil 
Procedure. Tex. R. Civ. P. 233.
        At 
voir dire, DFPS used all of its peremptory strikes to strike venire members two, 
eleven, seventeen, eighteen, nineteen, and twenty. After DFPS had exercised all 
its strikes, the attorney ad litem began to use his strikes to strike venire 
member twenty-one. In response, appellant’s counsel said, ”Wait a minute. 
Wait a minute. You don’t get another six.” DFPS responded that the ad litem 
should be allowed his six strikes because he represented a party and no one had 
moved to align the strikes. Appellant responded, saying that “Nobody made a 
motion to expand the number of strikes.” The court stated that its position 
was that the ad litem had an interest that he represented. Appellant said 
“Okay,” and the ad litem went on to exercise his six strikes to remove 
venire members numbered twenty-one, twenty-two, twenty-five, twenty-six, and 
twenty-nine. After the ad litem exercised his strikes, the jury was empaneled 
and sworn, and the court recessed for the day.
        The 
next day, appellant requested an evidentiary hearing on the peremptory strikes 
that DFPS and the ad litem had exercised the day before. At the hearing, the ad 
litem admitted that his position was that M.N.G should stay in DFPS’s care and 
that he had been aligned with the State’s position for the last two years. He 
further admitted telling appellant’s counsel the day before that he would 
leave the selection of the jury up to DFPS and appellant. Despite this 
representation, the ad litem admitted that he had coordinated the use of his 
strikes with DFPS in order to avoid duplicating their strikes. He conceded that 
appellant may have been slightly prejudiced by the fact that he and the DFPS 
together had twelve peremptory strikes compared to appellant’s six. However, 
he also opined that the jury that had been empaneled was a fair and open-minded 
one.
        Appellant’s 
trial counsel also testified at the hearing. He stated that had it not been for 
the ad litem’s promise that he was not going to use his strikes, appellant 
would have exercised her strikes more broadly. Appellant’s counsel reminded 
the court that he had objected as soon as it became clear that the ad litem 
intended to use his strikes. However, the court pointed out that prior to that 
moment, appellant had made no objections to the alignment of the parties, and 
appellant agreed. Appellant moved for a mistrial on the basis that the parties 
were aligned and the peremptory strikes were not equalized between them. The 
court denied appellant’s motion. Additionally, the trial court denied 
appellant’s motion for a stay to file a writ of mandamus with this court.
        The 
duty of the trial judge to alter the normal allocation of peremptory challenges 
in multiple party cases is set forth in Texas Rule of Civil Procedure 233. In 
multiple party litigation, upon the motion of a party made prior to the exercise 
of any peremptory challenges, the court has the duty to equalize the number of 
peremptory strikes among the sides. Tex. 
R. Civ. P. 233. In allocating peremptory challenges when multiple 
litigants are involved on one side of a lawsuit, the trial court must determine 
whether any of those litigants on the same side are antagonistic with respect to 
an issue of fact that the jury will decide. Scurlock Oil Co. v. Smithwick, 
724 S.W.2d 1, 5 (Tex. 1986) (op. on rehg); Garcia v. Central Power & 
Light Co., 704 S.W.2d 734, 736 (Tex. 1986); Patterson Dental Co. v. Dunn, 
592 S.W.2d 914, 918 (Tex. 1979); see also Tex. R. Civ. P. 233. If no antagonism 
exists, each side must receive the same number of strikes. Garcia, 704 
S.W.2d at 736; Patterson, 592 S.W.2d at 918.
        The 
existence of antagonism is a question of law that is determined after voir dire 
and prior to the exercise of the parties’ strikes and is based upon 
information gleaned from pleadings, pretrial discovery, information and 
representations made during voir dire, and any other information brought to the 
trial court’s attention. Scurlock, 724 S.W.2d at 5; Garcia, 704 
S.W.2d at 736-37; Patterson, 592 S.W.2d at 919. However, any error in the 
trial court's allocation of jury strikes among the parties must be preserved by 
a timely objection. See In re T.E.T., 603 S.W.2d 793, 798 (Tex. 1980); Patterson, 
592 S.W.2d at 921; Tex. Commerce Bank Nat’l Ass'n v. Lebco Constructors, 
Inc., 865 S.W.2d 68, 77 (Tex. App.—Corpus Christi 1993, writ denied), overruled 
on other grounds by Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc., 
962 S.W.2d 507, 530 (Tex. 1998). Generally, the proper time to object to the 
trial court's allocation of strikes would be at the same time that the 
determination of antagonism by the trial court should be made—after voir dire 
and prior to the exercise of the strikes as so allocated by the court. Lebco 
Constructors, Inc., 865 S.W.2d at 77.
        The 
Texas Supreme Court has recognized that, when defendants have collaborated on 
the exercise of their peremptory challenges so that no double strikes are made, 
this factor supports a finding that the defendants have used their ostensibly 
antagonistic positions unfairly. Lopez v. Foremost Paving, Inc., 709 
S.W.2d 643, 645 (Tex. 1986). Because, in this instance, the ad litem admitted 
that he and DFPS had coordinated their strikes in such a manner that they made 
no double strikes, we hold it was error for the trial court to allow those 
parties twice as many strikes as appellant. See id.; see also Vargas 
v. French, 716 S.W.2d 625, 627 (Tex. App.—Corpus Christi 1986, writ ref'd 
n.r.e.) (noting, after a review of the entire trial record, that there was “no 
antagonism” between defendants who had coordinated their peremptory challenges 
resulting in no double strikes).
Preservation of Error
        Nonetheless, 
DFPS insists that, if the trial court erred in allowing the ad litem and DFPS to 
collaborate in the exercise of peremptory challenges, appellant failed to 
preserve that error for review because she did not object in a timely manner. See 
Lebco Constructors, Inc., 865 S.W.2d at 77.
        As 
we have previously stated, in the rule 233 context, the proper time to object to 
the trial court's allocation of peremptory challenges is at the same time that 
the determination of antagonism by the trial court should be made—after voir 
dire and prior to the exercise of the peremptory challenges allocated by the 
court. Id.; see also Tex. 
R. Civ. P. 233 However, appellant did not object at that time because she 
was relying on the ad litem’s representation that the ad litem would 
not exercise any strikes and leave the jury selection up to DFPS and appellant.
        This 
case is similar to the circumstances in Van Allen v. Blackledge, 35 
S.W.3d 61 (Tex. App.—Houston [14th Dist. 2000, pet. denied). In Van 
Allen, prior to jury selection, the trial court held a hearing in chambers 
to allocate peremptory challenges among the parties. Id. at 64. The trial 
court ordered the defendants to exercise their strikes independently. Id. 
The defendants proceeded to exercise their strikes in separate rooms. Id. 
Immediately after the jury was selected and the panel was seated and sworn, 
plaintiffs moved for a mistrial on the grounds that the defendants had violated 
the court’s mandate and collaborated in exercising their strikes. Id. 
The trial court denied their motion. Id. at 65. On appeal, the defendants 
argued that plaintiffs had waived their objection to the allocation of the 
strikes because they did not object in a timely manner. Id. The appellate 
court held that the plaintiffs did not waive their objection under the 
circumstances because they objected at the earliest possible moment after it 
became clear that the defendants had coordinated their strikes in violation of 
the trial court’s mandate. Id. at 66-67.
        Similarly, 
appellant objected when it first became apparent that the ad litem had 
coordinated his strikes with DFPS and that the ad litem planned to use his six 
strikes after all. After being overruled and after the jury was empaneled and 
sworn, appellant moved for a mistrial. The trial court held a hearing in which 
the ad litem admitted that he had told appellant’s counsel that he would not 
exercise any strikes and that he was aligned with the position of DFPS. Under 
these circumstances, we hold that the appellant did not waive her objection.
        Because 
we hold that under the circumstances, appellant did not waive her objection 
regarding equalization of peremptory strikes, we must examine whether the trial 
court’s failure to apportion challenges among the parties or grant a mistrial 
constitutes reversible error.
Harm Analysis
        To 
obtain reversal of a judgment based upon an error in the trial court, the 
appellant must show that (1) the error occurred; and (2) it probably caused 
rendition of an improper judgment, or probably prevented the appellant from 
properly presenting the case to the appellate court. TEX. R. APP. 
P. 44.1(a); In re D.I.B., 988 S.W.2d 753, 756 & n.10 (Tex. 1999); Tex. 
Dep’t of Human Servs. v. White, 817 S.W.2d 62, 63 (Tex. 1991). Once error 
in the apportionment of peremptory jury challenges has been found, a reversal is 
required only if the complaining party can show that the trial was materially 
unfair. See Garcia, 704 S.W.2d at 737 (citing Patterson, 592 
S.W.2d at 920). This showing is made from an examination of the entire trial 
record. Id. If the trial is hotly contested and the evidence sharply 
conflicting, the error in awarding peremptory challenges results in a materially 
unfair trial. Id.; see also Lopez, 709 S.W.2d at 644.
        A 
review of the entire record in this case shows that the evidence presented at 
trial was not sharply conflicting. Regarding facts and history, appellant agreed 
with the State that she had endangered her other children by exposing them to 
abusive partners, had a pattern of conduct wherein she relied upon others to 
provide shelter and money for her, had difficulty maintaining a stable home, had 
been unable to remain employed for longer than a few months, and had difficulty 
providing food and medical care for her children when she had them in her 
custody. She admitted that her rights to her first child were terminated on (D) 
and (E) grounds in a default judgment because she failed to appear at trial. She 
also conceded that she relinquished her rights to three other children because 
she could not care for them and felt that termination was in their best 
interests. Ultimately, appellant only contests DFPS’s conclusion that the 
evidence of her past conduct indicates that she has no ability to care for M.N.G. 
in the future. None of the parties dispute the facts regarding appellant’s 
past conduct or her present living situation. Appellant contends that although 
she has failed as a parent in the past, this time if the child is returned to 
her it will be different. However, none of the testimony or the evidence in the 
record indicates that appellant received an unfair trial.
        A 
review of voir dire also does not indicate that appellant was prejudiced by the 
selection of any of the jurors on the panel. Appellant argued that she would 
have exercised her strikes more broadly had she known that the ad litem intended 
to use his strikes in coordination with DFPS. However, the ad litem’s intent 
became clear only when he began to strike venire member number twenty-one. 
Because appellant exercised her six peremptories under the assumption that the 
ad litem would not exercise his strikes we begin our review of voir dire 
starting at venire member number twenty-one. The jury members selected for the 
panel from the group starting after number twenty-one were venire members 
numbered twenty-three, twenty-seven, twenty-eight, thirty, and thirty-one.
        The 
potential jurors’ answers during voir dire revealed nothing prejudicial about 
any of the jury members selected from this group. In fact, the jurors selected 
indicated that they would weigh the evidence carefully. Venire member 
twenty-three (juror number eight) agreed that just because a parent’s rights 
had been terminated in the past, this did not mean that they could not change 
over a period of time and that the jury had to look at all the facts. Venire 
member twenty-seven (juror number nine) asked about the availability of 
faith-based counseling programs as an option for troubled parents. Along with 
venire member twenty-eight (juror number ten), venire member twenty-seven (juror 
number nine) commented on young people having babies and the problems that 
develop in society because of that.[5]  Venire 
member thirty (juror number eleven) indicated that it would be hard to sit in 
judgment of a parent when she had no children of her own, but that parents must 
take responsibility for their actions and the jury must look at all the 
evidence.
        Nothing 
in the voir dire, however, indicates that the failure to apportion strikes among 
the parties resulted in a materially unfair trial that caused the rendition of 
an improper judgment. Therefore, we hold that, although appellant’s complaint 
regarding peremptory challenges was not waived and the trial court erred in 
failing to allocate peremptory challenges among the parties, any error on the 
part of the trial court was harmless error and does not require reversal. 
Appellant’s second and third points are overruled.
INEFFECTIVE ASSISTANCE OF COUNSEL
        In 
anticipation that we might overrule appellant’s second and third issues for 
failure to preserve error, appellant’s fourth point complains in the 
alternative that her trial counsel was ineffective for failure to preserve error 
with respect to the peremptory strike equalization issues. Because we are 
holding that appellant preserved error regarding her second and third points, 
appellant’s fourth point is moot and we will not address it.[6]  
Accordingly, appellant’s fourth point is overruled.
BURDEN OF PROOF IN PARENTAL RIGHTS TERMINATION CASES
        A 
parent’s rights to “the companionship, care, custody and management” of 
his or her children are constitutional interests “far more precious than any 
property right.” Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S. Ct. 
1388, 1397 (1982). “While parental rights are of constitutional magnitude, 
they are not absolute. Just as it is imperative for courts to recognize the 
constitutional underpinnings of the parent-child relationship, it is also 
essential that the emotional and physical interests of the child not be 
sacrificed merely to preserve that right.” In re C.H., 89 S.W.3d 17, 26 
(Tex. 2002). In a termination case, the State seeks not just to limit parental 
rights but to end them permanently—to divest the parent and child of all legal 
rights, privileges, duties, and powers normally existing between them, except 
for the child’s right to inherit. TEX. FAM. CODE ANN. § 161.206(b) (Vernon Supp. 2004); Holick 
v. Smith, 685 S.W.2d 18, 20 (Tex. 1985).
        In 
proceedings to terminate the parent-child relationship brought under section 
161.001 of the family code, the petitioner must establish one or more of the 
acts or omissions enumerated under subdivision (1) of the statute and must also 
prove that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 
161.001; Richardson v. Green, 677 S.W.2d 497, 499 (Tex. 1984); Swate 
v. Swate, 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied). Both 
elements must be established; termination may not be based solely on the best 
interest of the child as determined by the trier of fact. Tex. Dep’t of 
Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).
        Termination 
of parental rights is a drastic remedy and is of such weight and gravity that 
due process requires the petitioner to justify termination by “clear and 
convincing evidence.” TEX. FAM. CODE ANN. §§ 161.001, 161.206(a); In re G.M., 
596 S.W.2d 846, 847 (Tex. 1980). This intermediate standard falls between the 
preponderance standard of ordinary civil proceedings and the reasonable doubt 
standard of criminal proceedings. G.M., 596 S.W.2d at 847; In re D.T., 
34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2001, pet. denied). It is defined as 
the “measure or degree of proof that will produce in the mind of the trier of 
fact a firm belief or conviction as to the truth of the allegations sought to be 
established.” Tex. Fam. Code Ann. 
§ 101.007 (Vernon 2002).
LEGAL SUFFICIENCY
        In 
her sixth and seventh points, appellant argues that the evidence is legally 
insufficient to support termination under sections 161.001(1) (D) and (E) of the 
family code.
Legal Sufficiency Standard of Review
        The 
higher burden of proof in termination cases alters the appellate standard of 
legal sufficiency review. In re J.F.C., 96 S.W.3d 256, 264 (Tex. 2002). 
The traditional no-evidence standard does not adequately protect the parent’s 
constitutional interests. Id. In reviewing the evidence for legal 
sufficiency in parental termination cases, we must determine “whether the 
evidence is such that a factfinder could reasonably form a firm belief or 
conviction” that the grounds for termination were proven. Id. We must 
review all the evidence in the light most favorable to the finding and judgment. 
Id. at 266. This means that we must assume that the factfinder resolved 
any disputed facts in favor of its finding if a reasonable factfinder could have 
done so. Id. We must also disregard all evidence that a reasonable 
factfinder could have disbelieved. Id. We must, however, consider 
undisputed evidence even if it does not support the finding. Id.
161.001(1)(E) Evidence 
Regarding Endangering Course of Conduct
        We 
first review appellant’s seventh point, where she complains that the evidence 
is legally insufficient to support the jury’s finding that she engaged in 
conduct or knowingly placed M.N.G. with persons who engaged in conduct that 
endangered M.N.G.’s physical or emotional well-being. See Tex. Fam. Code Ann. § 161.001(1)(E). 
Appellant contends that termination was not proper based on section 
161.001(1)(E) because she never had custody of M.N.G. at any time after her 
birth other than one hour of supervised visitation per week. Moreover, she 
maintains that her prior conduct, occurring before M.N.G.’s birth, does not 
constitute sufficient evidence to establish an endangering course of conduct. 
DFPS maintains, however, that appellant’s history of routinely relying on 
third persons to provide support and shelter for her and her children puts M.N.G. 
at risk of homelessness, neglect, and abuse if M.N.G. is to be returned to 
appellant’s care. DFPS contends that appellant’s history clearly 
demonstrates an endangering course of conduct that posed both physical and 
emotional danger to M.N.G.’s well-being.
        Under 
section 161.001(1)(E) of the Texas Family Code, the term “endanger” means to 
expose to loss or injury, to jeopardize. Tex. 
Fam. Code Ann. § 161.001(1)(E); Boyd, 727 S.W.2d at 533. 
Accordingly, when analyzing a jury’s findings pursuant to subsection (E), we 
must determine whether sufficient evidence exists that the endangerment of the 
child's physical well-being was the direct result of the parent's conduct, 
including acts, omissions, or failures to act. In re D.M., 58 S.W.3d 801, 
811-12 (Tex. App.—Fort Worth 2001, not pet.). Termination under section 
161.001(1)(E) must be based on more than a single act or omission; a voluntary, 
deliberate, and conscious course of conduct by the parent is required. Tex. Fam. Code Ann. § 161.001(1)(E); D.T., 
34 S.W.3d at 634; In re K.M.M., 993 S.W.2d 225, 228 (Tex. App.—Eastland 
1999, no pet.). However, it is not necessary that the parent's conduct be 
directed at the child or that the child actually suffer injury. Boyd, 727 
S.W.2d at 533. The specific danger to the child's well-being may be inferred 
from parental misconduct standing alone. Id.
        To 
determine whether termination is necessary, courts may look to parental conduct 
both before and after the child's birth. D.M., 58 S.W.3d at 812. 
Consequently, scienter is only required under subsection (E) when a parent 
places the child with others who engage in an endangering course of 
conduct. In re U.P., 105 S.W.3d 222, 236 (Tex. App.—Houston [14th 
Dist.] 2003, pet. denied) (op. on reh’g). As a general rule, conduct that 
subjects a child to a life of uncertainty and instability endangers the physical 
and emotional well-being of a child. In re S.D., 980 S.W.2d 758, 763 
(Tex. App.—San Antonio 1998, pet. denied).
        DFPS 
and appellant both presented evidence of appellant’s past conduct regarding 
her five children. We begin with appellant’s first child, H.W. He was first 
removed from her care after appellant took him to the hospital and did not 
return to pick him up. DFPS was also concerned about H.W. because appellant’s 
boyfriend, H.W.’s father, abused drugs and because H.W. appeared malnourished. 
At M.N.G.’s trial, appellant admitted that her relationship with H.W.’s 
father was abusive and controlling. Appellant did not show up at H.W.’s 
termination hearing, and the court rendered a judgment against her terminating 
her parental rights to H.W. on grounds of endangerment by conduct and by 
environment, and abandonment in 1990.
        Shortly 
after the termination regarding H.W., appellant went to Oklahoma. There she met 
Donald, whom she married. Soon, appellant became pregnant with D.H. Appellant 
testified at M.N.G.’s trial that Donald was violent and physically abused her, 
even during her pregnancy. She gave birth to D.H. in 1991, and remained in the 
abusive relationship with Donald until D.H. was almost a year old. Although she 
remained married to Donald, appellant eventually moved back to Texas and was 
living with her sister when she met Eugene.
        Within 
six months, appellant moved in with Eugene at his older sister’s house for a 
few weeks. Eventually, the couple moved in with Eugene’s mother because Eugene 
was having trouble with the police. At this point, appellant conceded that she 
saw a pattern developing wherein she would go from one abusive relationship to 
another seeking someone to support her and D.H. By the time appellant moved into 
Eugene’s mother’s house, she had given birth to Eugene’s first child M.H. 
in 1992; L.H. was born in 1995. Appellant testified that she was not allowed to 
use the phone or leave the house, and at times she and the children were locked 
inside the home to prevent them from leaving. Appellant did not work, and the 
family supported itself with sporadic income from Eugene, food stamps, Medicaid, 
and AFDC. Eugene routinely abused D.H. by hitting him with a plastic pipe and by 
depriving him of food. Appellant remained in this situation with her children 
for six years because Eugene told appellant he would kill himself if she left.
        In 
1998, DFPS received a referral on D.H. alleging physical neglect. When the DFPS 
investigator first arrived at appellant’s home, a female inside the home 
threatened to shoot her. The investigator returned with the police. The house 
was very small with a dirt floor; feces were all over the walls; and a chain was 
on the refrigerator. Eight dogs, two cats, four adults, and three children lived 
in the house.
        The 
investigator first spoke to D.H. out in the yard. He was seven years old, his 
hair was thinning, he limped, he was dirty and malnourished. D.H. had difficulty 
talking and was unable to form full sentences. However, he was able to tell the 
investigator that his father regularly hit him with a stick, he had been bitten 
by a rat, and was hungry because he received only two meals a day while the 
other children received three. Appellant lied to the investigator, was not 
forthcoming about her history, and told her that Eugene was not in the house. 
When the investigator discovered Eugene in the house, she confronted appellant 
and appellant became more forthcoming. Appellant told the investigator she was 
afraid of Eugene, but that she took good care of her children and did not know 
why D.H. drank out of the toilet when he was at school.[7]
        The 
home was condemned, and DFPS took appellant and her three children to a shelter. 
Appellant agreed with the safety plan proposed by DFPS, which required that 
Eugene not come to the shelter. However, the shelter called DFPS that night and 
told them that appellant had allowed Eugene to come to the shelter. DFPS took 
D.H. to the hospital for evaluation of his developmental and behavioral 
problems, and the doctors eventually placed him in a residential treatment 
facility in San Antonio. DFPS placed M.H. and L.H. in foster care.
        Next, 
a DFPS Intensive Family Reunification Unit worker began working with appellant 
to place M.H. and L.H. back in appellant’s home from foster care. Because of 
his behavioral and mental problems, D.H. remained in the residential treatment 
center. Appellant lived in section eight subsidized housing when the children 
came home to live with her in May 2000. From the beginning, appellant struggled 
to keep enough food in the house to feed the children. In June 2000, appellant 
began to struggle with employment problems. She lost her job and could not pay 
rent; she found another job, but lost it a month later, and finally found 
another in August. DFPS arranged for a charity to pay part of her rent in June 
and helped her with canned food and transportation and in applying for food 
stamps and Medicaid. However, appellant never followed through with her 
applications or appointments for services like food stamps and Medicaid.
        In 
September 2000, appellant was evicted from her apartment for nonpayment of rent 
and she and her children went to live at the Salvation Army shelter in the 
family program. The program required residents to keep their apartments clean 
and actively look for work. Appellant did not comply with the requirements, and 
the Salvation Army evicted them from the shelter in October. DFPS took the 
children back into foster care and appellant began living with a man named Tim 
on the street, under a freeway overpass.
        In 
December 2000, while living on the street, appellant discovered that she was 
pregnant again. At the time, she believed that Tim was the father. M.N.G. was 
born on May 24, 2001, while termination proceedings were pending regarding D.H., 
M.H., and L.H. DFPS received a referral regarding M.N.G. right after the birth 
alleging that appellant had drugs in her system. The allegations were false, but 
DFPS sought removal of M.N.G. anyway and placed her in foster care directly from 
the hospital. The police arrested Tim shortly after the birth, leaving appellant 
in a motel, unemployed, and with no means to support herself.
        Since 
then, appellant has lived in many different places. First, she moved in with 
Tim’s daughter in Amarillo from June 2001 to August 2001. Next, she lived with 
a friend in Fort Worth until April 2002. After that, appellant got an apartment 
of her own for a few months. When that did not work out, she moved in with her 
new boyfriend (who later became her fiancé) and his mother in Granbury.
        Meanwhile, 
DNA testing revealed that Tim was not M.N.G.’s father. Appellant named another 
man she met while living at the shelter to be the possible biological father of 
M.N.G. In addition to her unstable housing situation, appellant also failed to 
obtain and maintain stable employment pursuant to the DFPS service plan. From 
May of 2001 through trial in the spring of 2003, appellant was either unemployed 
or worked for brief periods at a convenience store in Amarillo (two months), 
Diamond Shamrock, Wendy’s, Jack-in-the-Box, McDonald’s (one month) and at 
the Texas Workforce Commission.
        At 
the time of trial, appellant was still living with her fiancé’s mother in 
Granbury.  She claimed that her living situation had stabilized now that 
she was living with her fiancé and his mother.[8]  
Appellant contended that she had a lawn business given to her by her fiancé; 
however, she admitted that she did not know how to mow lawns herself, could not 
drive, and did not have a car.  She relied on her fiancé for 
transportation. According to a financial budget admitted at trial, her income 
consisted of her fiancé’s disability payments, food stamps, projected future 
income from the lawn service, and income from a job that she had not even 
started. Appellant admitted at trial that she had a poor pattern of choosing 
abusive men and exposing her children to them. She conceded that she had 
opportunities to break out of this pattern and chose not to.
        Overall, 
the evidence showed that appellant consistently endangered her children by 
exposing them to abusive partners, had a pattern of relying on others to provide 
shelter and money for her, had difficulty maintaining a stable home, had been 
unable to remain employed for longer than a few months, and had difficulty 
providing food and medical care for her children when she had them in her 
custody. This evidence is such that a factfinder could reasonably form a fair 
belief or conviction that the grounds for termination were proven. Based upon 
this evidence, we hold that the evidence is legally sufficient to support the 
jury’s finding that appellant engaged in conduct that endangered M.N.G.’s 
physical or emotional well-being. We overrule appellant’s seventh point.
FACTUAL SUFFICIENCY AND BEST INTEREST
        In 
her fifth point, appellant contends that the evidence is factually insufficient 
to support the trial court’s finding that termination of the parent-child 
relationship was in the child’s best interest. The higher burden of proof in 
termination cases also alters the appellate standard of factual sufficiency 
review. C.H., 89 S.W.3d at 25. “[A] finding that must be based on clear 
and convincing evidence cannot be viewed on appeal the same as one that may be 
sustained on a mere preponderance.” Id. In considering whether the 
evidence of termination rises to the level of being clear and convincing, we 
must determine “whether the evidence is such that a factfinder could 
reasonably form a firm belief or conviction” that the grounds for termination 
were proven. Id. Our inquiry here is whether, on the entire record, a 
factfinder could reasonably form a firm conviction or belief that the 
termination of the parent’s parental rights would be in the best interest of 
the child. See id. at 28; In re W.C., 98 S.W.3d 753, 757 (Tex. 
App.—Fort Worth 2003, no pet.).
        Nonexclusive 
factors that the trier of fact in a termination case may use in determining the 
best interest of the child include:

        (1)    
the desires of the child;
 
        (2)    
the emotional and physical needs of the child now and in the future;
 
        (3)    the 
emotional and physical danger to the child now and in the future;
 
        (4)    the 
parental abilities of the individuals seeking custody;
 
        (5)    the 
programs available to assist these individuals to promote the best interest of 
the child;
 
        (6)    the 
plans for the child by these individuals or by the agency seeking custody;
 
        (7)    the 
stability of the home or proposed placement;
 
        (8)    the 
acts or omissions of the parent which may indicate that the existing 
parent-child relationship is not a proper one; and
 
        (9)    
any excuse for the acts or omissions of the parent.
 
Holley v. Adams, 
544 S.W.2d 367, 371-72 (Tex. 1976). These factors are not exhaustive; some 
listed factors may be inapplicable to some cases; other factors not on the list 
may also be considered when appropriate. C.H., 89 S.W.3d at 27. 
Furthermore, undisputed evidence of just one factor may be sufficient in a 
particular case to support a finding that termination is in the best interest of 
the child. Id. On the other hand, the presence of scant evidence relevant 
to each Holley factor will not support such a finding. Id.
        After 
reviewing the evidence, it is clear that appellant lacks fundamental parenting 
skills. She has consistently refused to comply with DFPS service plans requiring 
that she obtain and maintain stable housing and employment. Appellant continues 
to repeat her established pattern of living with men so that they may provide 
her with support, housing, and transportation. She is unable to hold a job for 
more than a few months and has never shown that she is able to provide for even 
the most basic needs of her children. Additionally, she concedes that obtaining 
full custody of M.N.G. may not be in the best interest of the child, but argues 
that the court should not terminate her parental rights, but leave M.N.G. in 
foster care until she is eighteen and allow appellant visitation rights. 
However, Stephanie Duren, a DFPS caseworker assigned to appellant, testified 
that this solution does not provide M.N.G. with stability and is more 
appropriate for situations where the child has a medical problem that a natural 
parent cannot handle alone. M.N.G. has no such medical condition.
        Appellant 
argues that her home is now stable, but the evidence presented shows only a 
tenuous stability at best. Appellant is still relying on support from a third 
party and little stands between appellant and homelessness if the relationship 
were to suddenly fail. We must conclude that the jury could reasonably form a 
firm conviction that termination of appellant’s rights would be in M.N.G.’s 
best interest. Accordingly, we hold that factually sufficient evidence exists to 
support the jury’s finding that termination of appellant’s parental rights 
to M.N.G. is in the child’s best interest. We overrule appellant’s fifth 
point.[9]
EX POST FACTO LAW
        In 
appellant’s eighth point, she complains that, as applied to her, section 
161.001(1)(M) of the family code is an ex post facto and retroactive law 
that violates the Texas Constitution. Section 161.001(1)(M) of the family code 
allows termination of parental rights regarding one child because the parental 
rights to another child have been terminated. Tex. Fam. Code Ann. § 161.001(1)(M). 
She argues that section 161.001(1)(M) did not exist when her rights to H.W. were 
terminated; therefore, it is unconstitutional to terminate her rights to M.N.G. 
on this ground. Because we have already held that the evidence was legally and 
factually sufficient to terminate appellant’s parental rights under family 
code section 161.001(1)(E) and 161.001(2) we need not address this point. See 
Tex. R. App. P. 47.1.
CONCLUSION
        Having 
overruled all of appellant’s points, we affirm the trial court’s judgment.
 
 
                                                                  TERRIE 
LIVINGSTON
                                                                  JUSTICE
  
  
PANEL B:   LIVINGSTON, 
DAUPHINOT, and WALKER, JJ.
 
WALKER, J. filed a dissenting opinion.
 
DELIVERED: August 19, 2004

 
COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-104-CV
 
  
IN 
THE INTEREST OF M.N.G.
   
   
------------
 
FROM 
THE 323RD DISTRICT COURT OF TARRANT COUNTY
 
------------
 
DISSENTING OPINION ON 
REHEARING
 
------------
        I 
respectfully dissent. Chapter 263 of the Texas Family Code sets forth several 
provisions the Department of Family Protective Services (DFPS) may invoke to 
maintain temporary conservatorship of a child beyond subsection 263.401(a)’s 
one-year period and thereby avoid dismissal of its termination suit. See Tex. Fam. Code Ann. § 263.403(a)(1)-(4) 
(Vernon 2002). DFPS did not utilize these provisions. Instead, DFPS chose to 
abandon and to immediately refile its suit seeking termination of M.N.G.’s 
mother’s parental rights, obtaining temporary conservatorship of M.N.G. in the 
refiled suit based on the same facts pleaded to initially remove M.N.G. from her 
mother. Because DFPS alleged no new grounds supporting its second—although 
really continuous—removal of M.N.G. from her mother and its second—although 
really continuous—appointment as temporary managing conservator of M.N.G., the 
trial court was required to dismiss this termination suit. See Tex. Fam. Code Ann. § 263.401(a); In 
re T.M., 33 S.W.3d 341, 348 (Tex. App.—Amarillo 2000, pet. filed); In 
re Ruiz, 16 S.W.3d 921, 927-28 (Tex. App.—Waco 2000, no pet.). 
Accordingly, I would sustain Appellant’s first issue and reverse the trial 
court’s judgment.
 
 
                                                          SUE 
WALKER
                                                          JUSTICE
  
  
DELIVERED: 
August 19, 2004

**Majority 
Opinion by Justice Livingston;  Dissenting Opinion by Justice Walker 
NOTES
MAJORITY OPINION NOTES:
1.  
While we agree, as the dissent has pointed out, that the procedural history of 
all the cases involving M.N.G. have at least violated the spirit and objective 
of section 263 of the Texas Family Code, we cannot agree that the time periods 
in the other cases can automatically be tacked onto the time periods from prior 
temporary orders appointing DFPS to create a violation of section 263.401. See 
Tex. Fam. Code Ann. § 263.401(a). 
The statute, unfortunate as it may be, fails to provide a method of aggregating 
time periods of other cases. Since this case is the only case of the four cases 
involving M.N.G. that has been appealed and its final order was entered before 
the first anniversary of its temporary order appointing DFPS (April 5, 2002), we 
cannot agree that the trial court erred in failing to dismiss it. See Tex. Fam. Code Ann. § 263.401. The 
failure to dismiss any of the prior cases was a procedural error not a 
jurisdictional one that appellant should have attacked by mandamus or appeal in 
those cases. See In re J.M.C., 109 S.W.3d 591, 595 (Tex. App.—Fort 
Worth 2003, no pet.); In re J.B.W., 99 S.W.3d 218, 222-24 (Tex. 
App.—Fort Worth 2003, pet. denied). This case is the only one that appellant 
challenged by mandamus or by appeal.
2.  
For the purposes of section 263.401, a final order is one that:
(1) 
requires that a child be returned to the child's parent;
(2) 
names a relative of the child or another person as the child's managing 
conservator;
(3) 
without terminating the parent-child relationship, appoints the department as 
the managing conservator of the child; or
(4) 
terminates the parent-child relationship and appoints a relative of the child, 
another suitable person, or the department as managing conservator of the child.
Tex. Fam. Code Ann. § 263.401(d).
3.  
The trial court severed DFPS’s initial termination suit out of cause number 
323-67629J-00 into cause number 323-69693J-01, which DFPS abandoned with the 
filing of its April 5, 2002 petition.
4.  
In its decree of termination regarding H.W., the trial court found that 
appellant had
Voluntarily 
left the child alone or in the possession of another not the parent and 
expressed an intent not to return; and
Knowingly 
placed and knowingly allowed the child to remain in conditions and surroundings 
which endangered the physical and emotional well-being of the child; and
Engaged 
in conduct and knowingly placed the child with persons who engaged in conduct 
which endangered the physical and emotional well-being of the child.
Compare 
Act of May 24, 1989, 71st Leg., R.S., ch. 808, § 1, 1989 Tex. Gen. 
Laws 3673, 3673 (former Tex. Fam. Code 
Ann. § 15.02), repealed by Act of April 6, 1995, 74th 
Leg., R.S., ch. 20, §§ 1, 2, 1995 Tex. Gen. Laws 113, 212, 282, with 
Tex. Fam. Code Ann. §161.001(1)(A), 
(D), (E) (Vernon 2002) (providing for involuntary termination of parental rights 
if the parent has
 
(A) 
voluntarily left the child alone or in the possession of another not the parent 
and expressed an intent not to return;
(D) 
knowingly placed or knowingly allowed the child to remain in conditions or 
surroundings which endanger the physical or emotional well-being of the child; 
[or]
(E) 
engaged in conduct or knowingly placed the child with persons who engaged in 
conduct which endangers the physical or emotional well-being of the child).
 
5.  
These comments were not directed specifically at appellant who was 
thirty-five-years-old at the time of the trial.
6.  
See Tex. R. App. P. 47.1.
7.  
Although this incident occurred at school, D.H. was seven and had never been 
permanently enrolled at a school. Appellant had tried to enroll him twice, but 
the first time the school was out of the district and the second time the school 
could not keep him because of his behavioral problems.
8.  
At trial, appellant was still married to Donald because she did not have enough 
money to file for divorce, but she had not seen him for twelve years.
9.  
Because we hold that there was sufficient evidence to support the jury’s 
findings under family code section 161.001(1)(E) and that termination was in the 
child’s best interest under section 161.001(2) we need not address 
appellant’s sixth point complaining of legal insufficiency under section 
161.001(1)(D). See In re S.F., 32 S.W.3d 318, 320 (Tex. App.—San 
Antonio 2000, no pet.).