IN RE P.A. AND C.A.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-277-CV

IN THE INTEREST OF 

P.A. AND C.A., CHILDREN 

------------

FROM THE 233RD
 DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

INTRODUCTION

Appellant, the mother of P.A. and C.A., appeals from the trial court’s judgment terminating her parental rights to P.A. and C.A.  In six issues, appellant complains that the trial court erred by not equalizing peremptory strikes between the attorney ad litem for the children and the Department of Family and Protective Services (DFPS); the loss of the parties’ peremptory strike lists and the jury identification cards prevented appellant from adequately presenting issue number one on appeal; the evidence is factually insufficient to show grounds for termination under family code sections 161.001(1)(D) and (E); the evidence is factually insufficient to show that termination of appellant’s parental rights was in the best interest of the children under family code section 161.001(2); and the trial court erred by allowing DFPS to call appellant as a witness when it had not designated appellant as a witness in its discovery responses.  We affirm.

EQUALIZATION OF PEREMPTORY CHALLENGES

In her first issue, appellant complains that the trial court erred by not equalizing peremptory strikes between DFPS and the attorney ad litem for the children, P.A. and C.A.  Appellant contends that there was no antagonism between DFPS and the ad litem on the issues of “conduct,” “environment,” and “best interest” termination grounds; thus, the ad litem and DFPS were aligned on the same side against appellant.  DFPS argues that the trial court did not err in not equalizing strikes because the children were not parties to the suit.  According to DFPS, a trial court’s duty to equalize strikes involves limiting the number of strikes between 
parties
.  DFPS argues that because the children were not parties, the trial court was under no obligation to equalize the strikes between the ad litem for the children and DFPS.  It follows, however, that if the children were not parties to the suit then the trial court erred by allowing the ad litem any peremptory strikes.  Thus, we must first determine to what extent  the ad litem, as representative for the children in the termination suit, functions as a “party.”

Under the family code, an attorney ad litem shall “participate in the conduct of the litigation to the same extent as an attorney for a party.”  
Tex. Fam. Code Ann.
 § 107.003(1)(D) (Vernon Supp. 2004-05).  “No harm or violation of any Statute has been shown in allowing the attorney ad litem to make peremptory strikes, question the witnesses and argue to the jury.”  
Priest v. Priest
, 536 S.W.2d 954, 955 (Tex. Civ. App.—Waco 1976, no writ).  Therefore, the trial court correctly allotted the ad litem her own peremptory strikes to exercise on behalf of the children.  However, upon appellant’s motion to equalize, the trial court, having allowed the ad litem strikes, was obligated to determine whether the ad litem was aligned with either side and then to equalize the strikes.  Having held that the trial court did not err by allotting the ad litem peremptory strikes, we now review the trial court’s denial of appellant’s motion to equalize.

Standard of Review

In civil cases, each party is entitled to six peremptory challenges in a case tried in the district courts.  
Tex. R. Civ. P.
 233.  In multiple party litigation, upon the motion of a party made prior to the exercise of any peremptory challenges, the court has the duty to equalize the number of peremptory strikes among the sides.  
Id.
  In allocating peremptory challenges when multiple litigants are involved on one side of a lawsuit, the trial court must determine whether any of those litigants on the same side are antagonistic with respect to an issue of fact that the jury will decide.  
Scurlock Oil Co. v. Smithwick
, 724 S.W.2d 1, 5 (Tex. 1986) (op. on reh’g); 
Garcia v. Central Power & Light Co.
, 704 S.W.2d 734, 736 (Tex. 1986); 
Patterson Dental Co. v. Dunn
, 592 S.W.2d 914, 918 (Tex. 1979); 
see also 
Tex. R. Civ. P.
 233.  The existence of antagonism is a question of law that is determined after voir dire and prior to the exercise of the parties’ strikes and is based upon information gleaned from pleadings, pretrial discovery, information and representations made during voir dire, and any other information brought to the trial court’s attention.  
Scurlock
, 724 S.W.2d at 5;  
Garcia
, 704 S.W.2d at 736-37; 
Patterson
, 592 S.W.2d at 919.  If no antagonism exists, each side must receive the same number of strikes.  
Garcia
, 704 S.W.2d at 736; 
Patterson
, 592 S.W.2d at 918.

DFPS contends that even if the children could be considered “parties,” the ad litem for the children was not aligned on the same side of the case as DFPS.  Appellant, however, argues that the ad litem showed that she was aligned with DFPS because her questions at voir dire illustrated that she advocated termination of appellant’s parental rights. 

An attorney ad litem is appointed to represent the interests of the children who are the subject of a termination proceeding, not the interests of DFPS or the parents.  
See
 
Tex. Fam. Code Ann.
 § 107.001(2); 
see also Moore v. Moore
, 898 S.W.2d 355, 359 (Tex. App.—San Antonio 1995, no writ); 
Chapman v. Chapman
, 852 S.W.2d 101, 102 (Tex. App.—Waco 1993, no writ).  However, the interests of the children may be aligned with the parents or DFPS’s interests.  Therefore, we must determine whether the trial court erred in finding that the ad litem and DFPS were not aligned on the same “side.”  “The term 'side' . . . is not synonymous with 'party,' 'litigant,' or 'person.'  Rather, 'side' means one or more litigants who have common interests on the matters with which the jury is concerned.”  
Tex. R. Civ. P.
 233.  Accordingly, we review all the information brought to the trial court’s attention prior to the exercise of the parties’ strikes, including, but not limited to, pleadings, pretrial discovery, and other information and representations made during pretrial hearings and voir dire.  

Here, a review of the pleadings reveals that DFPS asked the jury to terminate appellant’s parental rights on the grounds that termination was in the children’s best interest and that she violated one or more of the provisions of family code 161.001(1).
(footnote: 2)  With regard to the children’s father, the jury was asked to terminate his parental rights because it was in the best interest of the children and he violated one or more of the provisions of family code 161.001(1).  
Tex. Fam. Code Ann
. § 161.001(1).  DFPS’s pleadings made it clear that it sought termination of both parents’ rights.
(footnote: 3)  The ad litem filed no pleadings in this case.

During the pre-trial hearing, appellant made an oral motion to equalize peremptory challenges.  In response to the trial court’s questions regarding possible alignment between DFPS and the ad litem, the ad litem stated that “obviously, I’m concerned with the best interest of the children . . . .  As far as being aligned with [DFPS] at this point in time, you know . . . I haven’t heard all the evidence in the case, so I don’t know all the allegations they have . . . .  I really can’t say at this time that I’m aligned with the State.”  DFPS stated “I don’t believe that we’re aligned at all.  I’ve got . . . . all these people wanting different things, and, to me, that doesn’t stack up to alignment.”  DFPS continues saying, “Sometimes I have an ad litem standing next to me urging me for the termination, Do it, do it.  You know, I’ve got that sort of situation.  But I don’t really have that situation in this [case].” 

During voir dire, the ad litem’s first questions to the venire focused on finding jurors who would be capable of sitting in judgment of a parent in a termination case and be capable of terminating parental rights if the State proved its case by clear and convincing evidence.  Next, the ad litem asked the potential jurors if they would have difficulty believing a young child’s version of events in such a case.  The ad litem also asked the potential jurors about their preconceptions regarding children’s veracity and capability for lying and whether the jurors thought a child might tell the truth about important or serious things that happen to them.  She inquired whether the potential jurors would give credence to a child psychologist’s opinion and whether a sexually abused child might exhibit behavioral or emotional problems.  The ad litem asked the jurors what would be an appropriate reaction from a mother who was told by her child that she was sexually abused and whether the mother would be obligated to investigate the allegation further.  With regard to children’s responses to sexual abuse, the ad litem asked the potential jurors whether they agreed that children might have shame or be uncomfortable talking about sexual abuse and how it might affect a child if he or she were not believed.  The ad litem concluded voir dire by asking whether any of the potential jurors believed that sexual abuse “doesn’t really happen.”

After voir dire, appellant reurged her motion for equalization and argued that the ad litem and DFPS were aligned on the grounds for termination, but not necessarily best interest.  Appellant contended that it was evident from the ad litem’s voir dire questions that she thought there were grounds for terminating appellant’s parental rights.  DFPS responded saying,

I just didn’t hear anything in [the ad litem’s] voir dire that would suggest we are aligned.  I mean, she wants what’s in the best interest of the children, obviously.  And she’s looking for jurors that are going to—to help meet that end for the children, whatever it is, and I just—I don’t believe that we are aligned today. 

The ad litem responded saying, 

I don’t know what [appellant’s] meaning that I am aligned with [DFPS].  I thought that I asked questions  to try to ferret out jurors who, you know, would look at all the evidence in the case.  You know, I asked some defense questions, I asked some probably questions that could be construed as prosecutor questions.  

But I can’t—I don’t think at this point you can—I’m not sure that I’m—you know, in picking—that my motive in picking the jury panel are going to be the same as the State’s made. . . . I truly don’t believe that you could say at this point I’m aligned [with DFPS].” 

Appellant argues in her brief that during closing arguments, “True to her voir dire, the guardian ad litem for the children also advocated terminating [appellant’s] parental rights.” Appellant concludes that this is proof that the ad litem was aligned with DFPS at the time of voir dire.  We disagree.  The determination of alignment of parties is to be made on the basis of the pleadings and from information disclosed during pretrial procedures and other information that has been specifically called to the attention of the court.  
Perkins v. Freeman
, 518 S.W.2d 532, 534 (Tex. 1974).  “Although hindsight is often better than foresight, the action of a trial court in apportioning strikes must of necessity be evaluated in terms of information available at the time the challenges are allocated not on the basis of changes in the alignment of parties which may possibly occur thereafter during the course of the trial.”  
Lubbock Mfg. Co. v. Perez,
 591 S.W.2d 907, 921(Tex. Civ. App.—Waco 1979, writ dism’d by agr.).  A review of the ad litem and DFPS’s statements to the trial court that they were not aligned at the time they exercised their strikes, pleadings, pretrial proceedings, and voir dire convinces us that the trial court did not err in finding that the ad litem and DFPS were not aligned at the time the strikes were made.  Thus, the trial court did not err by denying appellant’s motion to equalize the peremptory challenges.  We overrule appellant’s first issue.

MISSING JURY INFORMATION CARDS AND PEREMPTORY STRIKE LISTS

In her second issue, appellant complains that because the parties’ peremptory strike lists and the jury identification cards were destroyed by the trial court and cannot be reconstructed, she was prevented from demonstrating harm with regard to issue one.  However, because we hold in issue one that the trial court did not err in finding that the parties were not aligned at the time they exercised their strikes and that the trial court did not err by denying appellant’s motion to equalize the peremptory challenges, appellant’s second issue regarding harm is moot.  Accordingly, we need not address it.  
See 
Tex. R. App. P.
 47.1.

FACTUAL SUFFICIENCY

In her third and fourth issues, appellant complains that the evidence is factually insufficient to show grounds for termination under family code sections 161.001(1)(D) (knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child) and 161.001(1)(E) (engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child).  
Tex. Fam. Code Ann
. § 161.001(1)(D), (E).

Standard of Review

A parent’s rights to “the companionship, care, custody and management” of his or her children are constitutional interests “far more precious than any property right.”  
Santosky v. Kramer
, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397 (1982).  “While parental rights are of constitutional magnitude, they are not absolute.  Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.”  
In re C.H.
, 89 S.W.3d 17, 26 (Tex. 2002).
  
In a termination case, the State seeks not just to limit parental rights but to end them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child’s right to inherit.
  Tex. Fam. Code Ann
. § 161.206(b) (Vernon Supp. 2004-05); 
Holick v. Smith
, 685 S.W.2d 18, 20 (Tex. 1985).  We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent.  
Holick,
 685 S.W.2d at 20-21;
 In re D.T.
, 34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2000, pet. denied) (op. on reh’g).

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one or more of the acts or omissions enumerated under subdivision (1) of the statute and must also prove that termination is in the best interest of the child.  
Tex. Fam. Code Ann
. § 161.001(1); 
Richardson v. Green
, 677 S.W.2d 497, 499 (Tex. 1984); 
Swate v. Swate
, 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied).  Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact.  
Tex. Dep’t of Human Servs. v. Boyd
, 727 S.W.2d 531, 533 (Tex. 1987).

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by “clear and convincing evidence.”  
Tex. Fam. Code Ann.
 §§ 161.001, 161.206(a); 
In re G.M.
, 596 S.W.2d 846, 847 (Tex. 1980).  This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings.  
G.M.
, 596 S.W.2d at 847; 
D.T.
, 34 S.W.3d at 630.  It is defined as the “measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.”  
Tex. Fam. Code Ann. 
§ 101.007 (Vernon 2002). 

The higher burden of proof in termination cases alters the appellate standard of factual sufficiency review.  
In re C.H.
, 89 S.W.3d at 25.  “[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance.”  
Id
.  In considering whether the evidence of termination rises to the level of being clear and convincing, we must determine “whether the evidence is such that a fact finder could reasonably form a firm belief or conviction” that the grounds for termination were proven.  
Id
.  Our inquiry here is whether, on the entire record, a fact finder could reasonably form a firm conviction or belief that the parent violated one of the conduct provisions of section 161.001(1) and that the termination of the parent’s parental rights would be in the best interest of the child.  
Id
. at 28. 

Background Facts

Appellant is P.A. and C.A.’s mother.  When C.A. was three years’ old, C.A. made an outcry of sexual abuse against “David.”  C.A. claimed that David had licked her vagina.  Appellant and her boyfriend David Leach lived together at the time of the allegations.  C.A. lived with her biological father when she made the allegation.  Although DFPS focused on David Leach as the perpetrator of C.A.’s sexual abuse, appellant contends that C.A. also knew David Hammer (C.A.’s paternal grandmother’s boyfriend) and that he could have been the abuser. 

In addition to being the alleged abuser of C.A., David Leach was also a multiple felon whose parole requirements prohibited him from being around children without supervision.  Appellant admitted that she was a “heavy“ alcohol abuser and that she used methamphetamines and marijuana around P.A. and C.A. and while she was pregnant with her most recent child.  Additionally, even after C.A. identified Leach as her abuser, appellant refused to move away from Leach as required by DFPS service plan.  Instead, appellant married Leach on May 9, 2003, approximately a month before this case went to trial.  The trial court terminated appellant’s parental rights to C.A. and P.A. on endangerment by conduct and environment, and best interest grounds.

Endangering Environment and Course of Conduct

In challenging the factual sufficiency of the jury’s findings on endangerment by conduct and environment, appellant primarily focuses on the sufficiency of the evidence to support C.A.’s allegation that Leach sexually molested her.  A finding that appellant endangered the children by allowing Leach to live with them, however, was not dependent upon a finding that Leach sexually abused C.A.  
See In re R.W.
, 129 S.W.3d 732, 742-43 (Tex. App.—Fort Worth 2004, pet. denied) (holding that despite father’s contention that the allegation of sexual abuse was dubious, the jury was free to believe that father did in fact sexually abuse child).  The evidence presented at trial showed that appellant endangered the children by leaving them alone with Leach.  Leach was a multiple felon whose express parole provisions prohibited him from being around children without supervision. 

Regardless of the fact that a finding of sexual abuse was not required, DFPS still presented ample evidence from which the jury could have found that Leach had abused C.A.  C.A. made multiple outcries to appellant, family, and hospital workers saying that “David had licked me right down there on my body,” and David “sucked me,” pointing to her genitals.  During a videotaped interview with a DFPS worker, C.A. identified David as “my Mom’s boyfriend.”  Appellant was aware that Leach had a prior sexual offense and that the terms of his parole prohibited him from being around children, but she nonetheless allowed Leach to continue to live with her and the children and to be alone with the children while appellant was at work. 

Other evidence supported that C.A. had been abused.  For example, she was sexually acting out before she was removed from the home and after she entered foster care.  C.A. identified Leach, not David Hammer, as her abuser to the rape exam nurse, her father, her mother, and foster mother.  C.A. also responded negatively to Leach during a visitation after she was removed.  

With regard to her own conduct, appellant admitted to using drugs while the children were in the house.  The children’s father testified that he and appellant took speed in the house for a three to five month period ending in March 2001.  Appellant testified that she and the children’s father smoked and injected methamphetamine while the children were in the house.  Sometimes appellant would get high on drugs and stay awake for days at a time.  Prior to using methamphetamine, both appellant and the children’s father smoked marijuana on a regular basis.  

Appellant failed to complete the requirements of the DFPS service plan.  Dione Simmons, a DFPS caseworker, testified that appellant had not done what was required by the department in order to keep her children.  Simmons also observed that appellant had not learned anything that would help her protect her children from sexual abuse.  Although appellant’s service plan required that she not live with Leach, she refused to move away from him, and eventually married him just before trial.  Appellant also failed to complete her required individual counseling sessions  and failed to attend a required class for the parents of sexual abuse victims.  Appellant admitted at trial that she also had not provided financial assistance to her children following their removal. 

After a review of the entire record, we hold that the evidence was factually sufficient to support a finding that appellant knowingly placed or knowingly allowed her children to remain in conditions or surroundings which endangered their physical or emotional well-being and engaged in conduct or knowingly placed her children with persons who engaged in conduct which endangered their physical or emotional well-being.  
Tex. Fam. Code Ann
. § 161.001(1)(D), (E).  Appellant’s third and fourth issues are overruled. 

Best Interest

In her fifth issue, appellant complains that the evidence is factually insufficient to support the finding, under family code section 161.001(2), that termination of appellant’s parental rights was in the best interest of the children.  
See id.
 § 161.001(2).

The nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(1) the desires of the child;

(2) the emotional and physical needs of the child now and in the future; 

(3) the emotional and physical danger to the child now and in the future; 

(4) the parental abilities of the individuals seeking custody; 

(5) the programs available to assist these individuals to promote the best interest of the child;

(6) the plans for the child by these individuals or by the agency seeking custody; 

(7) the stability of the home or proposed placement;

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and 

(9) any excuse for the acts or omissions of the parent. 

Holley v. Adams
, 544 S.W.2d 367, 371-72 (Tex. 1976).  These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate.  
C.H
., 89 S.W.3d at 27.  Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the children.  
Id.
  On the other hand, the presence of scant evidence relevant to each 
Holley
 factor will not support such a finding.  
Id.

Here, DFPS presented ample evidence to show that termination of appellant’s parental rights is in the best interest of the children.  For example, DFPS showed that appellant failed to complete her service plan, insisted on exposing her children to C.A.’s alleged sexual abuser, abused drugs and alcohol, failed to financially support her children, and was unable to deal with C.A.’s sexual abuse.  
See id. 
at 27-28.  Additionally, DFPS caseworker Dione Simmons testified that, in her opinion, termination of appellant’s rights was in the children’s best interest.  She stated that DFPS had plans to seek adoption for the children and to keep them together.  In Simmons’s opinion, the children were “very adoptable.”  The children’s behavior had also improved since entering foster care and at the time of trial the children had stopped acting out sexually and their “behavior [had] calmed down tremendously.” 

We hold that the evidence was factually sufficient to support a finding that termination of appellant’s parental rights was in the children’s best interest.

Appellant’s fifth issue is overruled.

APPELLANT AS A DFPS WITNESS

In her sixth issue, appellant complains that the trial court erred by allowing DFPS to call appellant as a witness when it had not designated appellant as a witness in its discovery responses.  In support of her argument, appellant relies upon Texas Rule of Civil Procedure 193.6, which provides that:

A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:

(1) there was good cause for the failure to timely make, amend, or supplement the discovery response;  or

(2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

Tex. R. Civ. P.
 193.6.

Appellant contends that because DFPS did not designate her as a witness in its discovery responses and did not show good cause for its failure to timely designate her as a witness, DFPS should not have been allowed to call appellant to testify.  In the petition to terminate appellant’s parental rights, appellant is listed under the heading “Parties to be Served.”  Appellant’s argument regarding good cause ignores that appellant is a named party to the termination suit for all purposes.  A named party is an exception to the requirements of rule 193.6.  
Id.
  Thus, because appellant was a named party, DFPS was not required to designate her as a witness in its discovery responses before calling her to testify.  
See id.
  Appellant’s sixth issue is overruled.

CONCLUSION

Having overruled all of appellant’s issues we affirm the trial court’s judgment.

SAM J. DAY

JUSTICE

PANEL A:  WALKER and MCCOY, J.J.; and SAM J. DAY, J. (Retired, Sitting by Assignment).

DELIVERED:  October 21, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
(1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

(2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

(3) executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment of parental rights; 

(4) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of DFPS for not less than six months, and DFPS has made reasonable efforts to return the child to the parent, the parent has not regularly visited or maintained significant contact with the child and the parent has demonstrated an inability to provide the child with a safe environment. 

Tex. Fam. Code Ann.
 §§ 161.001(1)(D), (E), (K), (N) (Vernon 2002).

3:
The children’s father does not appeal from the termination of his parental rights.